158 P.2d 859

BOARD OF COUNTY COM'RS OF SANTA
FE COUNTY v. SLAUGHTER et al.

No. 4813.

Supreme Court of New Mexico.

May 9, 1945.

See, also, 49 N.M. 133, 158 P.2d 854.

David W. Carmody, Dist. Atty., and Carl
H. Gilbert, both of Santa Fe, for appellant.

Seth & Montgomery, of Santa Fe, for
appellees.

MABRY, Chief Justice.

This appeal arises out of a condemnation proceeding filed by the Board of County Commissioners of Santa Fe County in the District Court of the First Judicial District in and for Santa Fe County. The original appellees, defendants below, Thad C. Slaughter and Emma J. Slaughter, his wife, were the owners of the property condemned. Since the suit herein was commenced, the original appellees, Thad C.

Slaughter and Emma J. Slaughter, have both died, and the case has been revived in the name of Phyllis W. Slaughter, administratrix of the estate of Thad C. Slaughter, deceased, hereinafter to be referred to as appellee, or "owner". The rights of other appellees herein are, necessarily, controlled by the disposition we make of the claim of appellee Phyllis W. Slaughter, and their situations, or rights, need not be separately, or further, noticed.

The regular statutory proceedings under the provisions of 1941 Comp., Section 25-901 et seq., were had with reference to the appointing of commissioners, or appraisers. An order of immediate entry was granted, the report of the commissioners filed, and a surety bond was furnished by the plaintiff in the amount of $15,000. Appellant board excepted to the report of the commissioners, the exceptions were overruled and appellants appealed to the District Court of Santa Fe County. Trial was had in the district court upon the stipulation entered into by and between counsel for appellant and appellees, and, after hearing, the court entered its judgment in favor of the appellant in so far as the right to condemn was concerned, but in favor of the appellee, the owner, in so far as the amount of damages and compensation were concerned, the judgment being in the amount of $11,000. It is from this judgment for damages that appellant, plaintiff in the court below, has taken its appeal.

U. S. Highway No. 85 between Glorietta, Santa Fe County, and Rowe, San Miguel County, at the time of the filing of this cause, went through the Slaughters' property. Immediately bordering upon this highway they had constructed a store, restaurant, residence, filling station and numerous tourist cabins; and, they had made other substantial improvements of a permanent nature. The area surrounding these buildings has been landscaped and the Slaughters have conducted a tourist business at this location for many years.

The New Mexico State Highway Department, in attempting to straighten out the many curves upon the highway, surveyed a new route upon which it is intended to relocate U. S. Highway No. 85. This new route also goes through the rear of appellee Slaughter's property, approximately three-eighths of a mile from the improvements, bearing in a southerly direction from the present location of U. S. Highway 85. There was sought to be condemned from the appellee Slaughter in this proceeding some 13½ acres of land which is to be, and now is, used for highway right of way purposes. Lying between the location of the owner's improvements and the new right of way is a mesa rising precipitously, approximately 200' in altitude, which makes direct access with the new highway practically impossible.

It is agreed by the parties that the actual value of the land taken is $10 per acre, or the sum of $136.32. However, the owner contends that by reason of the rerouting of most of the vehicular traffic away from the old highway and onto the new highway, a shorter route and a better improved road,

her property will be damaged in the amount of $11,000. Incidentally, it is stipulated to be the present intention of the New Mexico Highway Department to maintain the present, or old, road, thus emphasizing the absence of blocking, or stoppage, of ingress or egress. It may be agreed, of course, that with the new and more direct highway now completed, the normal tourist traffic on U. S. Highway 85 will not be over the old road. The trial court found that the taking of the small portion from the larger and compact tract of appellee's land did not of itself damage or injure the portion left, in any manner. It is conceded that unless this additional compensation claimed may arise because of the re-routing of the traffic, no recoverable damages in addition to the $136.32, the price of the land, has been sustained.

The controversy resolves itself into the following proposition:

In an eminent domain proceeding may the reduction in market value of land not condemned (where the actual taking for the new right of way from a portion of such land has not disturbed or affected the value of the part remaining), which is caused solely by a diversion of traffic formerly passing in front of a place of business, be considered in determining the amount to be paid for the portion actually taken?

It must be conceded that "private property shall not be taken or *damaged* for public use without just compensation." Art. 2, Sec. 20, Constitution of New Mexico. 1941 Comp. Sec. 25-901 et seq. provides the means for condemning and determining how it shall be taken. The point upon which the parties differ is as to what elements may be considered in arriving at "just compensation" for the land not actually taken, but, under the circumstances, adversely affected, or, as the owner would say, "damaged".

The general rule for arriving at just compensation for property not taken but adversely affected is the so-called "before and after" rule; and this poses the question: What was the value before the taking; and what is now the market value after the taking? The owner of the property, ordinarily, is entitled to receive the difference between these sums. 20 C. J. 730; 29 C.J.S., Eminent Domain, § 139. However, the vast majority of the courts approve a definite exception to this rule in that it is recognized that there are elements of damage for which no compensation will be given even though the market value may be adversely affected. 20 C. J. 779, 29 C. J.S., Eminent Domain, § 162. Specifically, with reference to this case, the rule is that ordinarily no person has a vested right in the maintenance of a public highway in any particular place. That exception is based upon the consideration that the State owes no duty to any person to send public traffic past his door. See cases cited in 118 A.L.R. 921.

It seems to be the universal holding that where the taking of one's property is not involved and a highway is relocated and leaves a property owner completely off the

new highway, but still with means of entrance and exit, that he has no right to damages for this reason alone. In other words, where the direct taking of some of his property is not involved, one cannot recover in damages for the relocation of a road entirely off of his property. The point at issue in this cause does not present exactly the same problem as that just mentioned (but the same answer is afforded) inasmuch as, in this case, the appellee, as distinguished from any other persons owning property upon the old highway, is having a part of her property taken for the new highway. It is not contended that other persons living on the old road, no part of whose property was taken, would be entitled to damages. However, appellee contends that inasmuch as a portion of her land is taken, no matter how small, she is entitled to compensation for an injury which is as to all others, none of whose property is so taken, "damnum absque injuria". Appellee's contention, therefore, must necessarily be that even though other property owners along the old road are injured in exactly the same manner as herself, the fact that the other property owners have no property which was needed for the new right of way prevents all others but appellee from recovering for the damage which all are suffering.

The courts easily distinguish special and direct from remote and consequential damages. See Wine v. Com., 301 Mass. 451, 17 N.E.2d 545, 120 A.L.R. 889, where it was held that a new road construction resulting in diversion of traffic, standing alone did not constitute a special injury for which damages would be allowed, but that blocking off traffic by a barricade which shut off the landowner's access to the general system of the public highways of the city did constitute injury special and peculiar to him.

The question involved herein is well annotated in 118 A.L.R. 921. The cases cited in the annotation are to the effect that a property owner, even under circumstances here present, has no right to compensation for diversion of traffic by reason of the relocation, or re-routing, of a highway.

One of the leading cases supporting appellant's contention, and noticed in the annotation, is Nelson v. State Highway Board, 110 Vt. 44, 1 A.2d 689, 693, 118 A.L.R. 915. There the question presented is almost identical with that in the instant case. In the Nelson case an award of $4,500 was made for consequential damages "due to use of appellants' land as a new route for the mainstream of public traffic". The Supreme Court of Vermont, in rejecting such item as consequential damages, states: "In diverting traffic from in front of the Nelsons' buildings to the new route there is no invasion of their rights nor is there any legal injury to the land remaining. Access to their buildings remains unchanged. The buildings and lands about them will remain exactly as before establishment of the new route except that travel past the buildings will doubtless be diminished. But the State owes no duty to the Nelsons in regard to sending public travel past their door. Our trunk line high-

ways are built and maintained to meet public necessity and convenience in travel and not for the enhancement of property of occasional landowners along the route. Benefits which come and go with changing currents of public travel are not matters in which any individual has any vested right against the judgment of those public officials whose duty it is to build and maintain these highways. The Nelsons are not entitled to receive any compensation for diversion of traffic as allowed in the last item set forth in the elements of damages. This appears to be in line with the holdings of other courts in every instance where this question has been considered under constitutional and statutory provisions similar to ours. * * *" Citing cases.

Another case which deals with facts quite like those we are considering is that of Wilson v. Greenville County, 110 S.C. 321, 96 S.E. 301, 302. After citing the rule that no person has a vested right in the continuance of a highway at public expense, that court said: "Respondent's attorneys concede that such is the law, and that, if the old road had been merely discontinued as a public highway, without relocating it on respondent's land, he would not be entitled to damages; but they contend that the abandonment of the old and the location of the new road on the same tract of land are so closely connected that they are inseparable. The contention is unsound. The two acts are separate and distinct in fact and in law, and the legal consequences are the same as if the old and the new road had been on the land of different owners."

The Montana Supreme Court in a similar case, State et al. v. Hoblitt et al., 87 Mont. 403, 288 P. 181, 184, stated as follows: "The owner of land abutting on a highway established by the public has no property or other vested right in the continuance of it as a highway at public expense, and, at least in the absence of deprivation of ingress and egress, cannot claim damages for its mere discontinuance, although such discontinuance diverts traffic from his door and diminishes his trade and thus depreciates the value of his land. * * *"

The Supreme Court of Pennsylvania has also ruled upon the very question involved herein. In the case of Petition of Johnson, 344 Pa. 5, 23 A.2d 880, it was held that no compensation could be awarded for reduction of market value or loss of business by reason of diversion of traffic.

The same question has also arisen in Arkansas, and the Supreme Court of that state there followed the general rule. See Greer v. City of Texarkana, 201 Ark. 1041, 147 S.W.2d 1004.

We find in the case of State ex rel. Sullivan, Attorney General v. Carrow et al., 57 Ariz. 434, 114 P.2d 896, a situation much like we have here. The facts are quite similar except, it might be noticed, that in the Arizona case, the State Highway Commission had promised the landowner that the location of the highway would not be changed and, based upon the promise, the condemnee proceeded to erect improve-

ments on his property, facing the old highway. The highway was changed, contrary to the promise, leaving the landowner's tourist cabins and improvements practically a complete loss by reason of the fact that but little traffic would thereafter pass thereby. But it was held that "since no man can have a vested right in having traffic routed by his place of business, and since, in any event, it is not contended that the traffic could not, had it wished, have used the old highway instead of the new", the owner was denied compensation for loss occasioned by this diversion of traffic.

When the owner contends for compensation for the diversion of tourist traffic, he "seeks compensation for the loss of something he never had, something in which he had no claim of property right or ownership at any time", People v. Gianni, 130 Cal.App. 584, 20 P.2d 87, 89. "Whatever of apparent hardships there may be in particular cases", says the California court in this leading and often quoted case, "where roads have been created for public use when the country was new, as in this state, * * * a greater hardship would be entailed upon the public if these roads could not now be vacated or changed to meet the present situation without compensating those whose premises may abut thereon for the loss or inconvenience they may sustain."

In support of the rule contended for by appellant, see also City of Chicago v. Spoor, 190 Ill. 340, 60 N.E. 540; City of El Paso v. Sandfelder, Tex.Civ.App., 118 S.W.2d 950; Robinett v. Price, 74 Utah 512, 280 P. 736; Richmond v. City of Hinton et al., 117 W.Va. 223, 185 S.E. 411; and Heil v. Allegeny Co., 330 Pa. 449, 199 A. 341.

In the case of People v. Ricciardi, 1943, 23 Cal.2d 390, 144 P.2d 799, 804, the court, while holding a right was impaired and damages sustained where the landowner, by the improvement in question was cut off from direct access to the through traffic highway, it restated the rule nevertheless that the owners "have no property right in any particular flow of traffic over the highway adjacent to their property." And, in Matter of Kingston-Port Ewen State Highway, Ulster County, 215 App. Div. 147, 213 N.Y.S. 337, the court observes that the damage complained of was not the result of the taking of a strip from the property of the owner for the new highway, but rather from the fact "that the traveling public have preferred to use the new highway strip and the connecting bridge over Roundout creek, rather than the old highway strip and the connecting ferry of the respondents." The court there held that such "consequential damages, based upon a diversion of travel" from the ferry landing on the lands not taken, were not the proper subject of an award.

It is agreed that this point has never been directly passed upon in New Mexico. Appellant suggests that the case of Mandell v. Board of County Commissioners of Bernalillo County, 44 N.M. 109, 99 P.2d 108, 110, in principle, supports its contention. This case has reference to the closing of a formerly dedicated street outside

the City of Albuquerque. It was there said:

"A mere inconvenience resulting from the closing of a street when another reasonable though perhaps not equally accessible approach remains, does not give rise to a legal right in one so inconvenienced, and courts do not look with favor upon claims based upon such grounds. * * * But the damage suffered must be substantially different in kind, and not merely in degree, from that suffered by the public in general. * * * In the case of Buhl v. Fort St. Union Depot Co., 98 Mich. 596, 57 N.W. 829, 23 L.R.A. 392, such injury, where not unlike that suffered by the public at large, was declared to be simply damnum absque injuria and not to be regarded as coming within the statute providing for the payment of 'all damages' consequent upon the closing of a street. [Citing cases.]

"The general rule would not apply, according to the weight of authority, where the property is left fronting on a cul-de-sac, which is not, however, the situation presented here * * *." See also Tomlin v. Town of Las Cruces, 38 N.M. 247, 31 P.2d 258, 97 A.L.R. 185, and Gallegos v. Conroy, 38 N.M. 154, 29 P.2d 334, decided upon principles which by analogy somewhat support the conclusion we here reach.

So far as counsel has been able to show and our independent search discloses, the cases are nearly, if not entirely, unanimous in their holding that mere diversion of traffic alone, regardless of the fact that the new road may run over a portion of the claimant's land for which portion compensation is paid, will not support a judgment for consequential damages. Counsel for appellee admit that the cases are, generally, against them, but they would not concede that all are. They challenge, rather, the reasoning relied upon in support of the general holding, not the claim that the almost complete unanimity of authority opposes them. They cite from Nebraska, Gillispie v. City of South Omaha, 79 Neb. 441, 112 N.W. 582, and two other cases, all of which appellant would distinguish as including other elements of damage, for example, less convenient access over the original road, after the change. Also cited by appellee are cases dealing with change of street elevation, and one involving an elevated railway, all of which may be distinguished, State v. Rascoe, Tenn., 178 S.W.2d 392, 395, partially supports her but this case may also be distinguished as one involving a situation where the road theretofore used was completely blocked, and there was involved the use of a circuitous route and a poor road to reach the landowner's outside trading point.

In speaking of what is the measure by which damages are to be determined when a portion, but not all, of one's property is so taken, the court in People v. Ricciardi, supra, citing Rose v. State of California, 19 Cal.2d 713, 123 P.2d 505, pointed out that under no rule would recoverable damages accrue "for diminution of property value resulting from highway changes caus-

ing diversion of traffic, circuity of travel beyond an intersecting street, or other non-compensable items."

Unless we can say that public roads are built primarily for the benefit of the occasional landowner along the route, rather than for the necessity and convenience of the general public, it must be said that the landowner has no vested right in the current of public travel. Nelson v. State Highway Board, supra. And, it can make no difference, as we view it, that a small portion of appellee's acreage may have been taken for the new right of way. The situation is no different from that where no portion of the land is taken, unless—which is not the case here—it may be said that the taking of some acreage from the whole, in some measure, and of itself, damaged the whole for the purpose for which it was reserved or used above and beyond the value to be allotted to the portion taken.

The applicable rule as to damages for diversion of traffic is the same under one situation as another; we test the claimed vested right to the current of public travel by the same measure, whether twenty feet may have been taken off the back of an owner's lot without damage to the front where the flow of traffic was formerly found, or whether the relocated highway is situated twenty feet further away so that it be not necessary to take any portion of the owner's land. Obviously, the landowner's claim must rest or fall upon a decision whether she has a vested right in the flow of public travel, which once came by her door, but for which now, for the convenience of the general public, a shorter and more convenient route has been opened and is being employed. We hold she has no such right.

If the new road were a secondary one, and the old one should still carry the main current of tourist travel, it is to be doubted whether appellee would contend she was damaged even though the public be. thus given its choice of two roads. And if that be true, then, after all, it is but to say the damages complained of arise out of the fact that another and better road has now been offered the traveling public and it has chosen to use it in preference to the older one; and, nevertheless, the remaining lands of the owner have suffered compensable damage.

The trial court erred in allowing damages claimed based on diversion of traffic to the new highway. The damages recoverable herein may not exceed the value of the land taken, or $136.32, an item not in dispute. For the reasons stated the judgment will be reversed with the direction that the cause be reinstated, the judgment heretofore rendered be set aside and judgment now be rendered in accordance with this opinion; and that appellees pay the costs herein. And it is so ordered.

SADLER, BICKLEY, BRICE, and LUJAN, JJ., concur.