385 P.2d 361

**STATE of New Mexico, ex rel. STATE HIGHWAY COMMISSION of New Mexico, Petitioner-Appellant,**

**v.**

**Al LAVASEK, Sr., Melvina Lavasek, William Lavasek and Irene Lavasek, Defendants-Appellees.**

No. 7057.

Supreme Court of New Mexico.

Feb. 1, 1963.

Rehearing Denied Oct. 14, 1963.

Earl E. Hartley, Atty. Gen., Hadley Kelsey, Joseph L. Droege, John C. Worden and M. J. Underwood, Sp. Asst. Attys. Gen., Santa Fe, for appellant.

Denny & Glascock, Lowell E. McKim, Gallup, for appellees.

NOBLE, Justice.

In 1956, the State Highway Commission, appellant, determined by resolution to improve U. S. Highway 66, east of Gallup, New Mexico, by reconstruction, making it a four-lane, controlled-access highway; to acquire necessary additional right-of-way; and access rights of abutting landowners on conventional U. S. 66 to the controlled-access highway. Eminent domain proceedings were commenced September 20, 1956 to acquire an additional 100 feet of right-of-way immediately adjoining the south right-of-way line of U. S. 66 and to condemn appellees', the Lavaseks, access rights to the controlled portion of the improved highway. This appeal is from a judgment, following a jury verdict, awarding appellees $51,000.00 damages for loss of access to the controlled-access highway.

U. S. 66 was a conventional two-lane, non-divided, heavily-traveled highway, with a 24-foot oil mat approximately in the center of a 200-foot right-of-way. After condemnation, the old oil mat was torn up and a new four-lane highway with median divider and access limited to designated places was constructed within the widened right-of-way. For convenience, we shall refer to the new highway as Interstate 40.

Appellees own 5.77 acres abutting on the north side of U. S. 66, a distance of 597.60 feet, on which were located several business establishments, consisting of a grocery, gasoline filling station, curio shop, tourist cabins, justice of the peace office, and post office. An oil-surfaced frontage road was constructed within and near the north side of the right-of-way to which appellees had full and complete access. An interchange was installed some 2100 feet east of the center of appellees' land. The frontage road extended from the interchange to a point approximately 700 feet west of appellees' property where it has direct, on-grade access to the west traffic lane of Interstate 40. Damages were awarded for the taking of a small tract of appellees' land south of U. S. 66, but no complaint is made regarding this.

No complaint is made, nor were any damages claimed because Interstate 40 is divided, whereas U. S. 66 was not. Appellees' claim of injury in the condemnation action was, so far as material here, limited to their claimed loss of direct access to the westbound traffic lane of Interstate 40.

The principal question on this appeal is raised by several points dealing with instructions given or refused by the trial court. Without discussing the language of the instructions themselves, we adopt appellees' statement of the issue on this appeal, as follows:

"* * *: Are the defendants [appellees], as abutting property owners on U. S. 66 as it previously existed in the form of a conventional, two lane highway to which they had unlimited, direct, and convenient access, entitled to 'reasonable free and convenient' access to the westbound traveled portion of the main thoroughfare thereof after it has been reconstructed within the original right of way as a limited access, four lane, divided highway?"

Appellees now have full and complete access from their abutting land to the frontage road within the right-of-way of the conventional 66 on which they may travel in either direction. Their claim of damage is the asserted denial of "reasonable free and convenient access" to the westbound traveled portion of the main thoroughfare. No claim is made of a right of direct access to the eastbound traffic lane of the main highway. If they had direct access to the westbound traffic lane immediately opposite their premises, they would

still be required to turn west on the main highway and proceed to their destination. As the frontage road is constructed, they may go west 700 feet on the frontage road where there is direct access to the westbound traffic lane of the main traveled thoroughfare. Thus, it is plain that appellees, here, are not required to travel even a more circuitous route to reach a destination in a westerly direction. It is clear to us that they are afforded reasonable access to the westbound traffic lane of the main highway.

Appellees, however, appear to contend that since they had free and unlimited access to conventional 66, they are entitled to the same full, complete and direct access to the westbound traffic lane of the new highway. Furthermore, it is apparent to us, although not directly so worded, that their real claim to damage is the denial of direct and unrestricted access by the public from the new highway to their property. The real complaint is loss of business because the traveling public cannot reach their business establishments as readily as from the old conventional 66. A landowner has no vested right in the flow of traffic past his premises, Board of County Commissioners v. Slaughter, 49 N.M. 141, 158 P.2d 859; State v. Danfelser, N.M., 384 P.2d 241.

If the highway had been built on a new location without regard to its distance from the old highway on which the abutter's property is located, that would have amounted only to diversion of traffic and would have been non-compensable even though it resulted in a complete loss of the business which the abutter had formerly enjoyed. Board of County Commissioners v. Slaughter, supra; State v. Silva, N.M., 378 P.2d 595. If a new controlled-access highway is located on the right-of-way of the old conventional highway where the moving traffic would, except for traffic restrictions, have direct and easy ingress and egress from the highway to the abutter's property, the state may, nevertheless, restrict the entrance and exit of the traveling public if such restriction appears reasonable as an exercise of its police power to regulate traffic, Carazalla v. State of Wisconsin, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276; Pennysavers Oil Co. v. State, Tex. Civ.App., 334 S.W.2d 546; and the state, in the exercise of its power to construct highways and control traffic, is not liable for loss of trade to abutting landowners as a result of the exercise of its police power. Pennysavers Oil Co. v. State, supra.

The State Highway Commission undoubtedly has the right in the interest of public safety not only to regulate the means of entry to and exit from a heavily-traveled highway by the public, but, also, to regulate the means and places of access by abutting property owners. Iowa State Highway Commission v. Smith, 248 Iowa

869, 82 N.W.2d 755, 73 A.L.R.2d 680; Carazalla v. State of Wisconsin, supra. See, also 27 Wash.L.Rev. 111, 121; 13 Mo. L.Rev. 19; 3 Stanford L.Rev. 298, where the decisions are collected, and the majority opinion in People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799, to the contrary, relied upon by appellees, is severely criticized.

Restriction of the right of entrance to and exit from a public street or highway is just as much a regulation of traffic as are median dividers, one-way streets, no left turns, no U turns, and other such widely recognized traffic controls. We perceive no valid distinction. Any diminution in the value of his property suffered by an abutter merely as the result of restricting the entrance and exit to and from the highway by the traveling public, in the reasonable exercise of the state's police power, is only a result of a diversion of traffic and is non-compensable.

State v. Danfelser, supra, held that an abutting property owner's right of access is only to the system of public highways, but not necessarily directly to the main traveled portion thereof. An abutter having access to a frontage road which provides reasonable access to the main traveled highway is afforded access to the public road system, and any circuity of travel, once that access is given, is non-compensable. We consider Danfelser controlling under the circumstances of the instant case.

We conclude that where a property owner is afforded complete ingress and egress to a frontage road on which his property abuts, from which he has reasonable access to the main system of public roads, any inconvenience suffered by him is merely non-compensable circuity of travel. Any decline that has occurred in the value of his property is only the result of a diversion of traffic and is non-compensable. His damages are the same kind suffered by all highway users, even though they are greater in degree.

Counsel for appellees merely question whether Board of County Com'rs. Lincoln County v. Harris, 69 N.M. 315, 366 P.2d 710 expresses a view contrary to what we have said here. We do not so view it. In Harris there was a change of grade in the street which made the abutting owners' ingress and egress difficult or inconvenient. The highway improvement in the instant case did not materially affect the abutters' ingress or egress from his property to the frontage road.

Loss of view of appellees' premises from the new highway, because its grade was lowered some 14 feet below that of the old highway where it passes their property, is apparently claimed as a compensable damage. It is asserted that travelers passing the premises are now unable to see the business buildings and so do not turn off to trade with them. This does not appear to be seriously argued as a compensable

damage. People v. Ricciardi, supra, is cited for the proposition that a property owner abutting on a highway has an easement of reasonable view of his property from the highway.

■■ No decision of this court has been called to our attention in which we have discussed easements of view. We are not here concerned with the right of an abutting owner to have visibility of his property from a street or highway protected against encroachments on the street or sidewalk obscuring the visibility of signs, window displays, nor are we concerned with the validity of ordinances or statutes restricting billboards. Such rights have been protected. 30 Georgetown Law Journal 723. People v. Ricciardi, supra, is the only decision to which our attention has been called, holding that an underpass limiting the view of an abutter's property from a street is a compensable injury. An easement of the right of view in an abutting property owner would create a burden on the servient tenement, the highway. An abutter's rights in a highway are subordinate to the paramount right of the public in the highway and of the public authority to so construct a highway as to serve the best use by the public. Perlmutter v. Greene, 259 N.Y. 327, 182 N.E. 5, 81 A.L.R. 1543. The state may construct a highway in any manner not inconsistent with or prejudicial to its use for highway purposes and the mere disturbance of the visibility of an abutter's property from the highway by such construction or reconstruction does not give rise to a compensable damage in the abutter.

Counsel for both parties are to be complimented for their excellent briefs and argument of the questions involved. The courts are not in accord on the questions before us. It would only lengthen this opinion and we think would serve no useful purpose to discuss each of the decisions from other jurisdictions cited or relied upon supporting a view contrary to that expressed here. Any other view would clearly be contrary to our recent holding in Danfelser. Suffice it to say that we have carefully examined each such case cited, and find them either distinguishable upon their facts, or we decline to follow them.

It follows that the judgment appealed from should be reversed and the cause remanded with instructions to vacate the judgment appealed from; to set aside the verdict of the jury assessing damages as to the improved property on the north side of the highway; and to enter a new judgment only for the damages assessed by the jury to the unimproved property of appellees on the south side of the highway. IT IS SO ORDERED.

COMPTON, C. J., and CHAVEZ, J., concur.

CARMODY, J., not participating.

MOISE, J., dissenting.

MOISE, Justice (dissenting).

I disagree with the opinion. My reasons for doing so are explained in my dissents in State v. Danfelser, N.M., 384 P.2d 241, and in State v. Silva, N.M., 378 P.2d 595.

I do not propose to repeat what is there said. The problems, though factually different, are basically the same, and my reasons for disagreement there force me likewise to take issue here.

I would, however, make one or two additional points. I do not agree that appellees' "real claim to damage is the denial of direct and unrestricted access by the public from the highway to their property," nor do I agree that "the real complaint is loss of business because the travelling public cannot reach their business establishments as readily as from the old conventional 66." Likewise, I take issue with the statement that the facts here present a reasonable traffic regulation situation under the police power of the state, or that there is only a diversion of traffic which is not compensable. Also, I would mention that the method of distinguishing Board of County Commissioners v. Harris, 69 N.M. 315, 366 P.2d 710, is most unconvincing and unsatisfactory.

However, aside from the foregoing points of disagreement, my real trouble with the opinion arises through the court's determination as a matter of law that through the frontage road appellees have "reasonable access to the main system of public roads." As I stated in my dissent in Danfelser, supra, the question of whether or not appellees' access has been made materially more difficult or inconvenient is one that should be answered by the fact finder. If such difficulty or inconvenience is found, the amount of damages should then be determined. In other words, if the interference with access resulting from being left off the main highway and relegated to service roads is of such material nature and made so difficult or inconvenient as to adversely affect to a substantial degree the value of the property for its highest and best use, then the owner is entitled to be compensated therefor.

The court instructed the jury to determine if the access to the property was "reasonable, free and convenient," and if it was, appellees were not entitled to compensation for limitation of access. In advising the jury that appellees could not recover if their access was "reasonable and convenient" after the changes contemplated by the proposed improvement, but that they could recover if it was not, the court in effect instructed that recovery should only be allowed if there was a material alteration so as to make the access to the property substantially less reasonable and convenient.

This accords generally with what seems to me to be the correct and proper rule. The jury having decided the issue upon substantial evidence, the result will not be dis-

turbed in this court. Adams v. Cox, 55 N. M. 444, 234 P.2d 1043; Reid v. Brown, 56 N.M. 65, 240 P.2d 213.

The trial court, in its instructions, advised the jury that appellees were entitled to compensation only if they had been denied "reasonable and convenient" access to and from the highway, considering all of the uses to which the property was adapted and available. The complaint concerning the instruction was that it allowed the jury to give compensation for "circuity of travel, inconvenience, loss of business or profits, diversion of traffic and view." However, in the instructions, the jury were advised "that mere circuity of travel and inconvenience is not compensable," and also that the fact an abutting landowner "may be required to travel an additional distance" because of construction of a divided highway, does not result in legal damages. Another instruction advised the jury that "loss of business" was not a proper element of damages.

As we have many times said, jury instructions must be considered in their entirety and if, when read all together, they correctly state the law, that is all that is required. McFatridge v. Harlem Globe Trotters, 69 N.M. 271, 365 P.2d 918. The instructions are not defective, but conform to what is a correct application of the law.

I would also add a word of disagreement to the holding of the majority in connection with the claim that appellees were damaged because of interference with their easement of view. See Klaber v. Lakenan, 8 Cir., 64 F.2d 86, 90 A.L.R. 783, and note commencing 793; Murphy, Inc. v. Town of Westport, 131 Conn. 292, 40 A.2d 177, 156 A.L.R. 568; Kelbro, Inc. v. Myrick, 113 Vt. 64, 30 A.2d 527; People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799; 30 Georgetown L.J. 723.

In my view, there was no reversible error in the trial and the judgment should be affirmed. I dissent from the contrary conclusion reached by the majority.