411 P.2d 1009

STATE of New Mexico ex rel. STATE HIGH-WAY COMMISSION of New Mexico, Petitioner-Appellant,

v.

Vance MAUNEY, Helen S. Mauney, Willis A. Smith, Jr., Jane B. Smith and Ralph P. Wolf, Defendants-Appellees.

No. 7639.

Supreme Court of New Mexico.

March 7, 1966.

**38**

Earl E. Hartley, Atty. Gen., Hadley Kelsey, Joseph L. Droege, John C. Worden, Neil C. Stillinger, Richard T. Whitley, Sp. Asst. Attys. Gen., Santa Fe, for appellant.

Botts, Botts & Mauney, Gerald R. Cole, Jethro S. Vaught, Jr., Albuquerque, for appellees.

CHAVEZ, Justice.

This is an action for a declaratory judgment, filed by the State Highway Commission of New Mexico, which alleged that their actions concerning the defendants' property were a proper exercise of the po-

lice power of the state and that no compensable taking of defendants' access to State Road 422 resulted from those actions. The trial court rendered judgment for the defendants and the petitioner appeals.

The petitioner-appellant will be referred to as the "Commission," and the defendants-appellees will be referred to as the "landowners." The defendant-lessee, whose rights in this case are dependent on those of the lessors-owners, is included in the latter term.

The landowners possessed, as owners, two tracts of land separated by State Road 422. The road was a four-lane highway, running generally north and south. There were two southbound and two northbound lanes, with a depressed medial divider and a fence down the center of the median in the vicinity of landowners' property. The larger tract of property was located on the east side of the highway and has always been, and is today, unimproved. This tract is referred to as tract 2. The smaller tract, referred to as tract 1, was raised, in part, to coincide with the grade of State Road 422, after the landowners had obtained a driveway permit to enter State Road 422. This permit has never been revoked. Landowners then filled in the state's right-of-way between tract 1 and the highway. Upon completion of a service station, landowners then operated said station from February 1, 1960, until March 1, 1961. These facts indicate that the landowners

had direct access to the southbound lanes of State Road 422, but could not directly reach the northbound lanes due to the fence in the median.

The Commission started highway project I 025–4(23)238 on February 8, 1961. The project involved the construction of two frontage roads, one on either side of State Road 422, within the original right-of-way. These frontage roads extend north from the interchange of State Roads 422 and 44 (Placitas Interchange), abut landowners' tracts 1760 feet from the interchange, and continue north to a dead-end 7500 feet north of the interchange.

Where the frontage roads abut the tracts, they are on the same grade as the original State Road 422. The Commission used the fill which landowners had placed in the right-of-way for their driveway when it constructed the frontage road in front of tract 1.

Guard fences were placed between the frontage roads and the original State Road 422 to prevent traffic from moving between them. except at the Placitas Interchange. Therefore, landowners must utilize the frontage roads to reach their tracts. In order to move a vehicle from the through lanes of State Road 422 to the tracts, one must transit the distances and grades of the interchange and travel about 1760 feet along the frontage roads.

The construction of the projects, and more particularly the construction of the barrier fence between the frontage road and the southbound lanes, has caused a depreciation of the market value of both tracts 1 and 2. The trial court concluded that the landowners had suffered compensable damage by reason of deprivation of access to tract 1, but no compensable damage as to tract 2. It is from the finding of compensable damage to tract 1 that the Commission appeals.

This is not the first case, resulting from the creation of limited access highways, to come before this court. The parties have presented excellent briefs which call attention to the variety of conflicting solutions and decisions made by the courts of this country. However, the general principles outlined in closely related New Mexico cases must be applied when applicable.

Both parties agree that it is clear that the state does not owe a duty to the landowner to send traffic past his property. The damage to defendant's business, when a road is straightened, diverting traffic over a new part of the road, is not compensable damage. Board of County Com'rs of Santa Fe County v. Slaughter, 49 N.M. 141, 158 P.2d 859.

In State ex rel. State Highway Commission v. Silva, 71 N.M. 350, 378

P.2d 595, decided in 1962, this court announced principles which are applicable to the instant case. We there recognized that highway development altered the ingress and egress of a landowner. A new highway was constructed on the opposite side of the old highway on which the landowner abutted. The old highway became a frontage road and had a dead-end about 800 feet north of the property. The landowners were required to travel about 350 feet to the south to utilize a portion of a traffic interchange when leaving or entering their property. This court recognized that access to the highway which landowners abut is a property right of which they cannot be deprived without just compensation as provided in Art. II, § 20, New Mexico Constitution. However, in State ex rel. State Highway Commission v. Silva, we said:

"The growing use of automotive transportation naturally led to many problems connected with the health and general safety of the traveling public and to the necessity for restrictions and regulations concerning the use of public highways. With the construction of modern, high-speed, through interstate highways came the necessity for controlled access to and from such highways in the interest of the safety of the public generally. It is well settled that limitation or regulation of highway traffic comes under the police power. * * * it cannot be doubted that the state, in the exercise of its police power, in the interest of the safety of the traveling public, has the right to limit or control access to certain highways. * * *"

This court also considered the fact that the frontage road which the landowners were forced to use was a dead-end similar to the one in the instant case. In Silva we cited Mandell v. Board of Com'rs of Bernalillo County, 44 N.M. 109, 99 P.2d 108, and said:

"* * * It is well established in this jurisdiction that mere inconvenience resulting from the closing of a street does not give rise to a legal right in one so inconvenienced, when another reasonable, though perhaps not equally accessible, means of access to the main street system remains. * * *"

And in conclusion stated:

"We think the better rule, and the weight of the more recent decisions, is that one whose property abuts upon a road or highway, a part of which is closed or vacated, has no special damage if his lands do not abut upon the closed portion thereof, if there remains a reasonable access to the main highway system. * * *"

It is acknowledged that in the Silva case the limited access highway was completely new, and the landowners were left on the

same pavement as they were before the construction. This difference will be treated later in the opinion.

This court considered another case involving the creation of a limited access highway in 1963. State ex rel. State Highway Commission v. Lavasek, 73 N.M. 33, 385 P.2d 361, in which the old road was completely removed. The state condemned additional property and built a four-lane through highway. It also constructed a frontage road which abutted the landowners' property at one point. The frontage road required the landowners to travel about 700 feet west on it to join the westbound through lanes. They had to travel about 2100 feet and through an interchange to join eastbound traffic on the through lanes. Before construction, they had direct access to both directions of travel. This court held that the landowners could not receive compensation for the change in their access and stated:

"If the highway had been built on a new location without regard to its distance from the old highway on which the abutter's property is located, that would have amounted only to diversion of traffic and would have been non-compensable even though it resulted in a complete loss of the business which the abutter had formerly enjoyed. * * If a new controlled-access highway is located on the right-of-way of the old conventional highway where the moving traffic would, except for traffic restrictions, have direct and easy ingress and egress from the highway to the abutter's property, the state may, nevertheless, restrict the entrance and exit of the traveling public if such restriction appears reasonable as an exercise of its police power to regulate traffic, * * *; and the state, in the exercise of its power to construct highways and control traffic, is not liable for loss of trade to abutting landowners as a result of the exercise of its police power. * * *"

■ In State ex rel. State Highway Commission v. Danfelser, 72 N.M. 361, 384 P.2d 241, this court considered a case much like the present one. In that case, the old highway was left intact as State Road 422 was left in this case. The state then constructed a frontage road between the landowners' property and the through portion of the old highway. The only difference between that construction and the project in the present case is that the state condemned and agreed to pay for some of the landowners' property on which they built the frontage road. The court defined the right of access, in this jurisdiction, as:

"* * * a right of ingress to and egress from land on an abutting street or highway and therefrom to the system of public roads, subject to reasonable traffic regulations and not affect-

·ed by diversion of traffic or reasonable circuity of travel."

The court found that there was no unreasonable interference with appellee's access and denied compensation to the owners.

Landowners in the instant case attempt to distinguish this case from the Silva and Lavasek cases by calling attention to the fact that, in those cases, the frontage road was made from the old highway, while in this case the frontage road was entirely new. They also attack the Danfelser case, where the frontage road was a new road, by indicating that several cases cited in that opinion involved new through roadways and old frontage roads.

This court cannot understand why a person's rights as to compensation should differ if the state should decide to use the old road for a frontage road or use it for the through lanes of a limited access highway. Under the definition of access in this jurisdiction, such a difference should make no change in the right to compensation for deprivation of access.

Landowners point out that the state cannot require an owner to use a secondary road at right angle to the main road, nor can it force use of a second road. The landowners are not so required in this case. They are still on State Road 422, even though some circuity of travel is required to reach the through lanes of the road.

Landowners also refer to earlier New Mexico decisions in support of their contention. Those same cases were brought to this court's attention in the Danfelser case. At that time, the court indicated that the change of grade situation referred to in Board of County Com'rs of Lincoln County v. Harris, 69 N.M. 315, 366 P.2d 710, was not in point in that case; and it is not in point in this case where the only change in grade occurs once a vehicle reaches the interchange.

New Mexican Railroad Co. v. Hendricks, 6 N.M. 611, 30 P. 901, and Bennett v. Nations, 49 N.M. 389, 164 P.2d 1019, were also considered in the Danfelser case, and the court stated that these cases appeared to involve total deprivation of access without any indication of reasonable access to the highway system. That is not the situation here.

The definition of access noted above requires us to consider the circuity of travel required of the landowners and determine if it is reasonable, for if it is not, landowners have been deprived of access.

The Commission appears to seek a definite rule by which circuity can be measured and considered in each case. This is not only impossible, but it is unnecessary to do so in deciding the case before us. The attorneys for both parties have illustrated in their briefs that a wide range of solutions to this type of problem have been held reasonable or unreasonable, depending on the

particular facts and the particular jurisdiction involved.

The circuity of travel set up when a limited access highway is constructed, by the very nature of such highways, may require that through traffic be routed around the through lanes and interchanges to frontage roads designed for local traffic. The reverse will be true when the local traffic on the frontage roads is directed to the through lanes.

In the present case, landowners seem to object to transiting the grades of the interchange. While this court recognizes that some grades can be so precipitous as to be unreasonable, we do not feel that the ordinary underpass or overpass involves unreasonable grades for the modern motor vehicle.

Both parties in this case stress the number of extra feet a vehicle must travel to reach the property involved. It is not solely the number of feet which must be considered, because the number and type of curves, as well as the attainable speed, all have a bearing on reasonableness. Here the state has required that through traffic, desiring to reach landowners' property, exit on an interchange one-third of a mile from the tracts and follow a frontage road for that distance.

The facts are not clear as to the method which northbound traffic used to reach the tracts before the project was constructed, but it does not appear that the new route is any more difficult than the old route. The southbound traffic, which had direct access before the construction, must now travel one-third of a mile past the tracts, turn onto an interchange, and then follow the frontage roads back down the right-of-way. We do not feel that this involves unreasonable circuity of travel. Therefore, landowners have not been deprived of access.

Landowners feel that the issuance of a driveway permit, which has never been revoked, and upon which they improved tract 1, enhances their position.

We have held that the landowners still have access to State Road 422. The driveway permit is still being honored in that the landowners are permitted to cross the state's right-of-way from their property to the pavement of the frontage road. Legally, they still have a driveway on State Road 422.

Even if we were to assume that the permit was revoked, or revoked in part, the law affords no relief in favor of the landowners. It is clear that a permit is a license, and the words are often used synonymously. Parsons v. People, 32 Colo. 221, 76 P. 666; Arlington Cemetery Corporation v. Bindig, 212 Ga. 698, 95 S.E.2d 378. Such license may be revoked in the exercise of police power of the state, Fochi v. Splain, Sup., 36 N.Y.S.2d 774; Latreille

v. Michigan State Board of Chiropractic Exam., 357 Mich. 440, 98 N.W.2d 611, whether or not the power of revocation is reserved, Vincent Petroleum Corporation v. Culver City, 43 Cal.App.2d 511, 111 P.2d 433; State ex rel. Morris v. West Virginia Racing Commission, 133 W.Va. 179, 55 S.E. 2d 263, and even though the licensee has expended money in reliance on the permit. State ex rel. Orleans v. Louisiana State Boxing Commission, 163 La. 418, 112 So. 31; Bland v. Bregman, 123 Conn. 61, 192 A. 703; Hathaway v. Yakima Water, Light and Power Co., 14 Wash. 469, 44 P. 896.

█ The landowners call attention to the fact that property values often rise when a road is built through a given tract. This increase in value is used to off-set the amount which the state must pay in eminent domain proceedings to take a portion of a tract for a road. Landowners argue that when the state so mitigates damages, and later destroys the increase in land value without compensating the owner, the state has essentially taken the amount originally used in mitigation. But, as landowners admit, such a situation was not shown in this case, and we do not decide the point.

The cause is reversed and remanded to the district court with direction that the judgment heretofore entered be vacated and that judgment be entered in favor of the Commission.

It is so ordered.

COMPTON, J., concurs.

MOISE, Justice (specially concurring in the result):

I have three times expressed my disagreement with the rule of law here followed. See State ex rel. State Highway Commission v. Silva, 71 N.M. 350, 356, 378 P.2d 595; State ex rel. State Highway Commission v. Danfelser, 72 N.M. 361, 369, 384 P.2d 241; State ex rel. State Highway Commission v. Lavasek, 73 N.M. 33, 39, 385 P.2d 361. The other members of the court remain unconvinced by what I said in my dissents. It thus appears that the rule announced in these cases, being the law in this state, no useful purpose would be served by further expressions of disagreement on my part. Although there are some minor factual differences between this case and those already decided, I can find no substantial basis for a contrary result, and while I still disagree with the reasoning, the earlier decisions support the conclusion here reached.

Accordingly, I concur in the result.