451 P.2d 984

### STATE of New Mexico ex rel. STATE HIGHWAY COMMISSION of New Mexico, Plaintiff-Appellant,

v.

### Woodrow Wilson BROCK, Charleen P. Brock, John J. Radosevich, Ann Radosevich, First State Bank and the Merchants Bank of Gallup, Defendants-Appellees.

No. 8094.

Supreme Court of New Mexico.

Oct. 21, 1968.

Rehearing Denied April 8, 1969.

Boston E. Witt, Atty. Gen., Joseph L. Droege, George E. McDevitt, Sp. Asst. Attys. Gen., Santa Fe, for appellant.

Hannett, Hannett & Cornish, Albuquerque, for appellees.

Benjamin M. Sherman, Paul F. Sherman, Bert E. Newland, I. M. Smalley, Ray Hughes, Deming, amicus curiae.

## OPINION

PER CURIAM.

The motion for rehearing is denied, the original opinion filed herein withdrawn and the following substituted therefor:

NOBLE, Justice.

Woodrow Wilson Brock and Charleen, his wife, (hereafter referred to as Brock) and John J. Radosevich and Ann, his wife, (hereafter referred to as Radosevich) owned land fronting on U.S. 66, a twenty-four foot, two-lane paved highway. The State Highway Commission (hereafter referred to as Commission) has appealed from the amount of damages awarded to the property owners by a jury.

Radosevich owned approximately 150 acres with some 2140 feet frontage on the highway, which was used for a sawmill operation. The Commission took approximately 15 acres and the direct access to the highway. A two-lane paved frontage road was installed between the highway and the Radosevich property to which that property had access and which, in turn, gave access to the new four-lane interstate highway at the Thoreau interchange, a mile and a half east of the Radosevich land.

Brock owned four tracts, one of which is similar to the Radosevich property, containing 430 acres, of which approximately 37 acres were taken. The other three tracts abutting on U.S. 66 constitute parts of the Brock ranch. Approximately 85 acres of these lands were taken, together with the direct access to the new highway. Frontage roads were constructed on the northern side of the new highway extending east and west from the Thoreau interchange, along both the Radosevich and Brock lands, and on the southern side extending from the western limits to the interchange. Access across ditches to the frontage roads are at the same places as they had entrances or roads prior to construction of the divided highway. It appears from the record that the general route from the ranch headquarters to the highway is substantially the same route as before construction of the new highway, but that the ranch entrance at the highway is now not as wide as prior to the new construction. There is no longer any way for Brock to drive cattle across the highway from one side to the other. An underpass was provided for driving cattle from the pasture lying south and east of the interchange to one lying immediately north of the highway, but Brock complains that his cattle cannot be made to use it.

■ Even though ten separate points are relied upon, this case turns on whether non-compensable elements of damage may be considered in applying the "before and after" rule as a measure of damages. Radosevich and Brock argue that upon authority of Bd. of Trustees v. B. J. Service, Inc., 75 N.M. 459, 406 P.2d 171; Bd. of County Comm'rs v. Harris, 69 N.M. 315, 366 P.2d 710 and Tucumcari v. Magnolia Petroleum Co., 57 N.M. 392, 259 P.2d 351, this court is committed to the "before and after" rule as a measure of damages, whereby the property owner is entitled to recover, as compensation, the amount by which the fair market value of his property has been depreciated by the taking. This rule, they contend, requires consideration and payment for the loss occasioned by the inability of highway travelers to readily get to roadside businesses, as a necessary element of the depreciation in the fair market value of the remainder after the taking of direct access. We cannot agree.

■ It is well settled in this State that mere inconvenience resulting from the closing of streets or roads which requires circuity of travel by those abutting on such roads to reach the main highway system does not give rise to a legal right in one so inconvenienced, when another reasonable, although perhaps not equally accessible, means of ingress and egress is afforded. Mandell v. Bd. of Comm'rs, 44 N.M. 109, 99 P.2d 108. And, once reasonable access is given to the main highway system by means of frontage roads, any circuity of travel occasioned by the loss of direct ingress and egress is noncompensable. State ex rel. State Highway Commission v. Danfels-

er, 72 N.M. 361, 384 P.2d 241. It is equally well settled that loss of business or of prospective business, because the traveling public cannot reach a roadside business establishment as readily as before the restriction of direct access, amounts only to a diversion of traffic and is non-compensable. State ex rel. State Highway Commission v. Silva, 71 N.M. 350, 378 P.2d 595; State ex rel. State Highway Commission v. Lavasek, 73 N.M. 33, 385 P.2d 361. We said in Lavasek:

"If a new controlled-access highway is located on the right-of-way of the old conventional highway where the moving traffic would, except for traffic restrictions, have direct and easy ingress and egress from the highway to the abutter's property, the state may, nevertheless, restrict the entrance and exit of the traveling public if such restriction appears reasonable as an exercise of its police power to regulate traffic * * * and the state, in the exercise of its power to construct highways and control traffic, is not liable for loss of trade to abutting landowners as a result of the exercise of its police power."

A review of the record in this case makes it apparent that witnesses for Brock and Radosevich considered that they are entitled to the same free, full, complete and direct access to the new highway that they formerly had to the old two-lane 66. It is equally apparent to us that the landowners' real complaint was loss of prospective business because the traveling public cannot reach their prospective business establishments not yet constructed but which it was thought could be constructed on lands abutting the new highway, as readily as from the old conventional 66. Unquestionably, witnesses considered the value of abutting lands "before taking" as having a potentially increased value because they might have been utilized for homesites or a roadside business. They clearly based their greatly reduced "after" valuation for the remaining property upon the loss of prospective business because the public can no longer reach such prospective business property as readily and directly as from the old highway.

Without attempting to set out the testimony of the expert witnesses at length or to deal with each witness, we think the basis of the expert opinion can be summed up by the following, respecting depreciation in value to the remainder caused by the restricting of the entrance and exit of the traveling public as an exercise of the state's police power to regulate traffic:

"Q. In other words, the ability of traffic to go by immediately by those businesses on the highway, is that right, sir?

"A. The inability of traffic to get off to a business after one was established there.

\* \* \* \* \* \*

"Q. So it isn't a question of access, it's a question of loss of traffic, isn't that it?

"A. That is correct, sir."

And after testimony that the frontage road dead ends just beyond the Radosevich land:

"Q. You considered that as a part of your appraisal of these damages? It dead ends down west of the Radosevich property—

"A. I considered it as reducing the accessibility somewhat, yes sir.

"Q. And therefore reducing the value, is that right?

"A. Yes, sir."

And in respect to Brock's land:

"Q. Now, you tell us that you have lost that, so I am asking you if you mean by that that the traffic, those—the lands there are no longer available for that kind of business?

"A. That's right.

"Q. So that you have lost the sites because traffic can no longer drive directly off the highway on to these properties?

"A. That's right."

A reading of the record makes it apparent to us that the real basis of the claims of Brock and Radosevich to damages, and the opinion of their appraisers respecting the reduced value of the remaining property is the denial of direct and unrestricted access by the public from the interstate highway.

They ask how those factors can be eliminated under the "before and after" rule which they argue requires an appraisal of the market values "before and after" and the subtraction of one from the other. The identical question was posed in Bd. of County Comm'rs v. Slaughter, 49 N.M. 141, 158 P.2d 859, where we said that ordinarily a property owner is entitled to receive the difference between the "before and after" value, but that where non-compensable elements of damage affect the value to the remaining property, an exception to the general rule is recognized so that such non-compensable element is eliminated. In Slaughter, as here, the state and the abutting landowner differed as to the elements to be considered in arriving at the "just compensation" required by art. II, § 20 of the Constitution; § 22–9–39 et seq., N.M.S.A. 1953, for land not actually taken but injuriously affected. Slaughter expressed the proper method of arriving at such just compensation under the "before and after" rule, as:

"The general rule for arriving at just compensation for property not taken but adversely affected is the so-called 'before and after' rule; and this poses the question: What was the value before the taking; and what is now the market value after the taking? The owner of the property, ordinarily, is entitled to receive the difference between these sums. 20 C.J. 730; 29 C.J.S. Eminent Domain § 139. However, the vast majority of the courts approve a definite exception to this rule in that it is recognized that there are elements of damage for which no compensation will be given even though the market value may be adversely affected. 20 C.J. 779, 29 C.J.S., Eminent Domain, § 162. Specifically, with reference to this case, the rule is that ordinarily no person has a vested right in the maintenance of a public highway in any particular place. That exception is based upon the consideration that the State owes no duty to any person to send public traffic past his door. * * *"

We further said in State ex rel. State Highway Commission v. Lavasek, supra, that:

"The State Highway Commission undoubtedly has the right in the interest of public safety not only to regulate the means of entry to and exit from a heavily-traveled highway by the public, but, also, to regulate the means and places of access by abutting property owners. * *

* * * * * *

"Any diminution in the value of his property suffered by an abutter merely as the result of restricting the entrance and exit to and from the highway by the traveling public, in the reasonable exercise of the state's police power, is only a result of a diversion of traffic and is non-compensable."

Since construction of the divided four-lane highway, Brock and Radosevich must travel the frontage roads in only one direction to reach the interchange. That, however, would be equally true if they had direct access to one lane of the divided highway. The inconvenience to an abutter having access to a frontage road so that his travel is no more circuitous than that of the traveling public is non-compensable. See State v. Lavasek, supra. No material change in the road leading from the Brock headquarters to the highway has been pointed out to us.

Brock and Radosevich took no cross-appeals. Instructions that denial of Brock's former right to drive his cattle across the highway was an assertion of the state's police power and any damages suffered thereby are non-compensable, and that delays caused by flooding or snow on

the frontage roads are non-compensable became the law of the case.

■ The trial court erred in permitting testimony of values which included non-compensable elements of damages. Bd. of Trustees v. B. J. Service, Inc., supra; Bd. of County Comm'rs v. Harris, supra; and Tucumcari v. Magnolia Petroleum Co., supra, do not, in our view, express a different view. No questions of non-compensable elements of damages were present in any of those cases. There was a change of grade in Harris which made the abutter's ingress and egress more difficult but it did not involve the exercise of the state's police power in traffic regulation. The testimony in B. J. Service, Inc. and Tucumcari v. Magnolia Petroleum Co. concerned compensable elements of damage so that the general rule referred to in Slaughter was clearly applicable. The instant case is controlled by Slaughter and requires application of the exception there enunciated.

■ In the instant case, no testimony concerning compensable elements of damage has been pointed out to us except the value of the land taken. The damages recoverable herein may, accordingly, not exceed the value of the land taken. The jury did not fix that value. For the reasons stated, the judgment will be reversed with direction that the judgment heretofore entered be set aside and a new trial granted.

It is so ordered.

COMPTON and CARMODY, JJ., concur.

MOISE and LaFEL E. OMAN, Judge, Court of Appeal, dissenting.

MOISE, Justice (dissenting).

In State ex rel. State Highway Commission v. Mauney, 76 N.M. 36, 411 P.2d 1009 (1966), I acquiesced in the result reached by the majority of the court for the announced reason that my objections, stated in three dissents (State ex rel. State Highway Commission v. Silva, 71 N.M. 350, 378 P.2d 595 (1962); State ex rel. State Highway Commission v. Danfelser, 72 N.M. 361, 384 P.2d 241 (1963), and State ex rel. State Highway Commission v. Lavasek, 73 N.M. 33, 385 P.2d 361 (1963)) had proved fruitless, and I was accordingly forced to accept the contrary conclusion announced by the majority as the law of this state.

Notwithstanding my recognition of the law as announced, I am once again moved to express my disagreement in the instant case because of the application of those rules.

In my dissent in Danfelser, supra, I stated:

"The question which they do not answer is by what method do they determine that an abutting landowner who has been deprived of direct access to the express portion of a highway, previously enjoyed by him, has or has not suffered compensable damages?"

I might have added:

"Having determined that certain elements going into value are not compensable, they do not explain by what formula compensation is to be measured in such cases."

In the instant case, an attempt is being made to resolve this question, left unexplained in the previous decisions. As I understand the answer, it amounts, in effect, to a double standard for arriving at just compensation when property rights are taken or damaged through condemnation. I question the legality and constitutionality of the distinctions attempted to be drawn. Reliance is principally placed on some language quoted from Board of County Commissioners of Santa Fe County v. Slaughter, 49 N.M. 141, 158 P.2d 859 (1945). In my dissent in Danfelser, supra, I discussed Slaughter, supra, and attempted to point out why that decision did not apply in the situation there being considered. I repeat what was there stated:

"In Slaughter, the following was said by the court:

'It seems to be the universal holding that where the taking of one's property is not involved and a highway is relocated and leaves a property owner com-

pletely off the new highway, but still with means of entrance and exit, that he has no right to damages for this reason alone.'

"It is true that a literal reading of this language used by the court, if entitled to general application, would deny appellees any recovery in the instant case. However, the Slaughter case did not involve interference or changing of access in any sense. A new road was built on a new location, leaving the property owner's improvements with the indentical access to the road as it previously existed unchanged in the slightest. Accordingly, it is plain to see that the language used, insofar as appellant would apply it to the instant fact situation, was dicta at best. While in no sense desiring to in any way detract from the holding in Slaughter under the facts of that case, I am not impressed that the language quoted is controlling here.

*"Neither does the recognition that compensation is to be paid for loss of value to property because of taking or interference with access mean that damages are being paid for circuity of travel or for loss because of diversion of the stream of traffic. Rather, it simply amounts to payment for the difference in the market value of the property before and after taking, or damaging access for public use. I do not see how anything different can be considered as compliance with the requirements of Art. II, Sec. 20, N.M.Const."* (Emphasis now supplied).

I would now only add that the quotation from Slaughter, supra, relied upon in the opinion of the majority, together with the authority upon which it is based, does not in my view support the decision.

As a practical proposition, the conclusion reached by the majority here, and the precedent established thereby to be applied in cases to follow, will result in great injustice and deprivation of property without just compensation, in direct violation of Art. II, § 20, N.M.Const. A person who has bought a piece of property in a busy area may find its principal value has evaporated overnight through action of the sovereign in denying direct access to the street—and this, without compensation. I submit, this is a most astonishing result, and one which cannot be reconciled with longstanding concepts of value of property, and of constitutional rights. I venture the thought that persons heretofore recognized as experts in the field will find it most difficult to estimate market value of property when accessibility has been materially changed, if they are denied the right to consider the principal elements which generally are utilized to arrive at value.

I want it understood that I am talking only about value of property and the proper method for its determination as announced in Board of Trustees v. B. J. Service, Inc., 75 N.M. 459, 406 P.2d 171 (1965), with which I agree. I am not urging compensation for anything different or additional.

Without desiring to extend the discussion, I would again note that the decision here reached cannot be reconciled with a number of our cases: Board of County Comm'rs of Lincoln County v. Harris, 69 N.M. 315, 366 P.2d 710 (1961); Board of Comm'rs of Dona Ana County v. Gardner, 57 N.M. 478, 260 P.2d 682 (1953), as well as the following, decided since Silva, Danfelser and Lavasek, supra: Board of Trustees v. B. J. Service, Inc., 75 N.M. 459, 406 P.2d 171 (1965), and Wheeler v. Board of County Comm'rs of San Juan County, 74 N.M. 165, 391 P.2d 664 (1964).

For the reasons stated, I dissent.

OMAN, Judge, Court of Appeals (dissenting).

I concur in the reasons stated by Justice Moise in support of his dissent. I do, however, wish to add the following thereto in support of my dissent from the majority opinion.

The majority announce, and correctly so, that this court is committed to the "before and after rule" as the proper measure of damages, but then conclude their opinion by stating that: "no testimony concerning

compensable elements of damage has been pointed out to us except the value of the land taken. The damages recoverable herein may, accordingly, not exceed the value of the land taken."

The only conclusion I am able to reach from this language is that, if only a portion of the condemnee's property is taken for highway purposes, the "before and after rule" is no longer the applicable rule, but a new rule is now to be applied. This rule is: The condemnee is entitled (1) to the value of the lands actually taken, and (2) to such specific damages as may be occasioned to the remainder of the lands by the taking, but excluding depreciated market value by reason of (1) impaired ingress and egress, (2) increased circuity of travel between the traffic lanes of the main highway and the remaining lands, (3) impaired ability to move from one portion of the remaining lands to other portions thereof by reason of the division of the lands by the highway, and (4) loss of use of the remaining lands and improvements thereon, to whatever degree, by reason of a division of the lands by the highway, and the impairment of their use as an economic unit. These are the elements of damage involved in the present case, which the majority say are not compensable.

It is true the lands were divided by the old highway, but the appellees had reasonably free movement across the same from one portion of their lands to the other portions thereof. This they no longer have.

Some of the recent decisions by this court demonstrate clearly that the application of the "before and after rule," for the purpose of ascertaining the damages to which a condemnee is entitled, when only a portion of his property is actually taken by the condemnor, requires that the fair market value of the entire property immediately before the taking be ascertained, that the fair market value immediately after the taking of that portion of the property which is not actually taken be ascertained, and that the condemnee then be awarded as his damages the difference between these "be-fore and after" fair market values, if there be a difference, and if the "after" fair market value be less that the "before" fair market value. Board of Trustees v. B. J. Service, Inc., 75 N.M. 459, 406 P.2d 171 (1965); Board of Trustees v. Spencer, 75 N.M. 636, 409 P.2d 269 (1965); State ex rel. State Highway Comm. v. A. T. & S. F. Ry., 76 N.M. 587, 417 P.2d 68 (1966). A determination of the fair market value of the remaining lands immediately after the taking will necessarily include the benefits, if any, accruing to the remaining lands by reason of any proposed construction by the condemnor, and will also necessarily include the damages, if any, caused to the remaining lands by reason of the taking and by reason of any proposed construction by the condemnor. Board of Trustees v. B. J. Service, Inc., supra; Board of Trustees v. Spencer, supra.

The court's instruction No. 3, which has not been attacked and which is as follows, is in accord:

"In this case only a part of the defendant's property was taken. The 'just compensation' to which defendant is entitled is the difference between the fair market value of his property immediately before and immediately after the taking, the date of taking being May 8, 1962."

Since no attack has been made upon this instruction, this is the law of this case. American Tel. & Tel. Co. v. Walker, 77 N.M. 755, 427 P.2d 267 (1967); State ex rel. State Highway Commission v. A. T. & S. F. Ry., 76 N.M. 587, 417 P.2d 68 (1966); Sanchez v. Board of County Commissioners, 63 N.M. 85, 313 P.2d 1055 (1957). Thus, in my opinion, this court cannot properly reverse and remand the case for a new trial with directions to change the measure of damages from that stated in the instruction to that of the value of the lands taken.

I am unable to accept the majority opinion for a further reason. Although the majority do not so state in their opinion, I submit that the logical application of the reasoning of their opinion, to a determination of the compensable value of the lands actually

taken, compels a deduction from the fair market value of these lands, as of the time of the taking, of that portion of such fair market value as was attributable to the presence of the existing highway and the traffic thereon. If it is proper to deduct certain elements from the "after value," then why not deduct these same elements from the "before value"? If the public need not compensate the condemnee for this loss in the one instance, then why in the other?

I am unable to square the majority view with my understanding of the constitutional enjoinder that "private property shall not be taken or damaged for public use without just compensation," or with the "before and after rule," so repeatedly declared by this court to be the proper measure of damages, where only a portion of the condemnee's property is taken.

For the reasons stated, I dissent.