419 P.2d 460

**CITY OF ALBUQUERQUE, New Mexico, a municipal corporation, Plaintiff-Appellant,**

**v.**

**M. L. CHAPMAN and Geraldine Chapman, his wife, Defendants-Appellees.**

**No. 7920.**

Supreme Court of New Mexico.

Oct. 17, 1966.

Frank L. Horan, Perry S. Key, Albuquerque, for appellant.

Hines & Mistretta, Albuquerque, for appellees.

## OPINION

JOE W. WOOD, Judge, Court of Appeals.

The city appeals from a judgment awarding compensation to defendants in a condemnation proceeding. The issues are: (1) mootness, (2) the effect of a subsequent dedication, (3) the effect of the city's master plan and (4) evidence to support the monetary award.

The proceeding followed the commissioner method set forth in § 22–9–1 et seq., N.M. S.A.1953. In addition, the city obtained an order granting them the right to immediate occupancy and use of the tract sought to be condemned. Section 22–9–18, N.M.S.A.1953. The matter reached the district court by the city's appeal from the order confirming the commissioners' report.

Defendants Trombley and Chapman (appellees herein) owned a thirty-acre tract abutting Indian School Road in Albuquerque. The trial court found that the city took a thirty-five-foot strip of this land for use in widening the road. Its judgment awarded compensation for the strip taken.

After the city obtained its order authorizing immediate entry, the land was sold to the Edens. Both the contract of sale and the warranty deed described the entire thirty acres.

Fifteen months after the order authorizing immediate entry and nine months after the deed to the Edens, a plat of Eden Manor was filed with the county clerk. The plat describes the entire thirty acres and shows its acceptance by the city. A thirty-six-foot strip along the north end of the thirty-acre tract is shown on the plat as a part of Indian School Road. Thirty-five feet of the thirty-six feet is the land described in the condemnation petition. The plat dedicates easements for streets shown thereon. It is signed by the Trombleys, the Chapmans and the Edens. The plat was filed while this condemnation action was pending.

The city points out that under § 14–2–5, N.M.S.A.1953, the dedication of the thirty-six-foot strip on the plat is deemed to vest the fee thereto in the municipality. It contends the dedication waived any claim for compensation as to the thirty-five-foot strip described in the condemnation proceedings and further action as to the thirty-five-foot strip became moot.

For the case to be moot the city must be successful in its contention that the dedication waived any right to compensation. This contention presents an actual controversy as to the manner of acquisition of the thirty-five-foot strip and prevents the issue from being moot. Hamman v. Clayton Municipal School Dist. No. 1, 74 N.M. 428, 394 P.2d 273.

What is the effect of the dedication? By the order authorizing immediate entry, the city had the right to occupy and use the thirty-five-foot strip sought to be condemned. The undisputed testimony is that before the Edens purchased the property, the city had put the thirty-five-foot strip to its own use; the street "was already curbed, guttered and paved." This use occurred at least nine months prior to the dedication.

Private property is not to be taken for public use without just compensation. Constitution of New Mexico, article II, § 20. Constitutional rights rest on substance, not on form. Liability to pay compensation is not to be evaded by leaving title in the owner while depriving him of the beneficial use of the property. When interference with the use of property by its owner consists of actual entry upon land and its devotion to public use for more than a momentary period, "there is a taking of property in the constitutional sense, whether there has been any formal condemnation or not." Nichols, Eminent Domain § 6.1 [1] (3rd ed. 1963).

The taking is complete "where an entry is made upon property by the condemnor and an act committed which indicates an intent to appropriate the property." Nichols, supra, § 6.1 [2] and cases therein cited. See LaFontaine's Heirs, etc. v. LaFontaine's Heirs, 205 Md. 311, 107 A.2d 653; Taylor v. New Jersey Highway Authority, 22 N.J. 454, 126 A.2d 313, 62 A.L.R.2d 1211.

The city's taking was complete prior to the sale to the Edens. Under the applicable statutes and the facts, the city became liable to pay just compensation.

Was the liability to pay compensation waived by the dedication? No, because as to the thirty-five-foot strip there was no dedication. Only the owner of land can dedicate it. There is no power to dedicate where there is no power to alienate. Metzger v. Ellis, 65 N.M. 347, 337 P.2d 609. Once the city had occupied the thirty-five-foot strip and put it to beneficial use under authority of the court to do so, the defendants could no longer alienate it. The fact that the judgment of condemnation had not been entered at that time does not change this result. The judgment confirmed the taking which occurred prior to formal condemnation and as authorized by § 22–9–18, N.M.S.A.1953.

Planning authority is given to the city by §§ 14–2–14 to 14–2–33, N.M.S.A.1953. Albuquerque exercised that authority through its ordinance 686. The city regulates subdivisions and their platting. Under the city ordinance, unplatted land (such as the thirty-acre tract of defendants) cannot be put to use as a subdivision without prior approval of the city. To obtain that approval, it requires dedication of the streets shown on the subdivision plat. It also requires

that the streets conform to its master plan for streets.

In this case the thirty-five-foot strip was included within the planning of Indian School Road as a secondary highway. No use of this thirty-five-foot strip would have been approved unless it conformed to the plan. The city states:

"* * * [T]hat the purpose of a master plan would be thwarted if the owner of unplatted land could be entitled to compensation for right of way needed to extend a thoroughfare as shown on the master plan through his land. * * *"

No issue is raised as to the extent of the city's planning authority or as to the conditions it imposes in the exercise of its authority. The issue is whether the city may avoid liability for compensation in this case because it would have required the land to be dedicated as a street in conformity with its plan—this being the same use for which it instituted the condemnation action.

The city relies on Blevens v. City of Manchester, 103 N.H. 284, 170 A.2d 121. That case dealt with the validity of legislation enabling municipalities to regulate subdivision of land—a point not in issue here. Both parties rely on Ayres v. City Council of City of Los Angeles, 34 Cal.2d 31, 207 P.2d 1, 11 A.L.R.2d 503.

In Ayres, the landowner brought mandamus to compel the city to approve a subdivision map without certain imposed conditions. The city's power to impose reasonable conditions was upheld. On the issue of eminent domain versus planning, the California court stated:

"The petitioner may not prevail in his contention that, since the use of the land for the purposes stated was contemplated in any event, the dedication and use reservation requirements in this proceeding are unconstitutional as an exercise of the power of eminent domain. A sufficient answer is that the proceeding here involved is not one in eminent domain nor is the city seeking to exercise that power. It is the petitioner who is seeking to acquire the advantages of lot subdivision and upon him rests the duty of compliance with reasonable conditions for design, dedication, improvement and restrictive use of the land so as to conform to the safety and general welfare of the lot owners in the subdivision and of the public. * * *"

Here, the city used its powers of eminent domain to take private property. At the point of taking no plat approval was involved. The city could have waited until platting was involved and required a dedication of the thirty-five-foot strip as a condition of plat approval. If it had done so, the issues would be as in the Ayres case. However, it chose to proceed under eminent domain. Having taken the property, it

cannot avoid payment therefor on the basis that if it had not "taken," it could have required a gift of the property as a condition for use of the remainder of the tract at some future time.

The distinction is this: in condemnation proceedings there is a compulsory taking of property for public use; in platting affairs it is a voluntary proceeding by the landowner seeking to acquire the advantages of lot subdivision. To obtain the desired advantages, the property owner must comply with reasonable conditions imposed by the city within its authority. See Ridgefield Land Co. v. City of Detroit, 241 Mich. 468, 217 N.W. 58; and Newton v. American Security Co., 201 Ark. 943, 148 S.W.2d 311.

The city contends there is no substantial evidence to support the award of damages. The claim is three-fold.

First, it is claimed that subsequent to initiation of the condemnation proceeding, the land sold for a higher value than the value on June 4, 1958, this being the date for assessing compensation under § 22–9–9, N.M.S.A.1953. According to the city, this subsequent sale is conclusive on the issue of whether the defendants were damaged by the taking. We disagree. Section 22–9–9, N.M.S.A.1953, provides that the "actual value" on June 4, 1958, is to be the measure for determining compensation and damages. There was testimony (1) of the value of land on June 4, 1958, (2) of the value of the land taken and (3) that there were no benefits to be offset. This supports the trial court's award.

Second, it is claimed that no damages of any kind should have been awarded to these defendants because of the sale to the Edens. They assert that defendants could not have been damaged because they sold the entire thirty acres, and thus had no interest in the property. This contention overlooks the fact that the city had taken the thirty-five-foot strip before the sale to the Edens. The city took the tract from these defendants. Under our constitutional provision, it is liable to pay just compensation for what it took.

The city says that its liability is to the Edens, contending that the right to compensation runs with the land. The Edens are not a party so the right to the award, as between defendants and the Edens and as between the city and the Edens, is not presented. As between the city and the defendants herein, the right to just compensation was in the defendants. The defendants owned the land when this action was instituted and when possession was taken by the plaintiff, and nothing remained to be done except to fix and pay the damages. As already stated above, the Edens acquired no interest in the property at issue nor any right to the unpaid damages. Com-

pare Mesich v. Board of County Com'rs of McKinley County, 46 N.M. 412, 129 P.2d 974.

 Third, it is claimed that the witness whose testimony supports the award had an incorrect understanding of the law and therefore his testimony should be disregarded. This court said in City of Albuquerque v. Chapman, 76 N.M. 162, 413 P.2d 204 (unrelated to the present case):

"* * * Opinions by real estate appraisers on 'before and after' market values must be considered in connection with related facts on which they are based, and a satisfactory explanation must be given as to how the witness arrived at his conclusion. * * *"

The witness met this requirement. He gave his opinion, the facts on which they were based and explained how he arrived at his conclusion. Such testimony is substantial evidence to support the award. The details of his testimony show a practical application of the before and after rule. City of Albuquerque v. Chapman, supra. This being so, the witness' opinions as to the law, whether or not erroneous, are of no consequence.

The judgment is affirmed. It is so ordered.

NOBLE and MOISE, JJ., concur.