867 P.2d 1160

**COUNTY OF DONA ANA, By and Through its BOARD OF COUNTY COMMISSIONERS, Plaintiff–Appellee,**

v.

**William C. BENNETT, Judith S. Bennett, and William C. Bennett, Jr., Defendants–Appellants.**

No. 20308.

Supreme Court of New Mexico.

Jan. 10, 1994.

Law Systems of Las Cruces, P.A., Anthony F. Avallone, Las Cruces, for defendants-appellants.

Kevin D. Elkins, Deputy County Atty., Las Cruces, for plaintiff-appellee.

## OPINION

MONTGOMERY, Justice.

The New Mexico Court of Appeals certified this appeal to us under NMSA 1978, Section 34–5–14(C) (Repl.Pamp.1990), as involving the following question of substantial public interest: Whether the New Mexico Uniform Jury Instruction on the measure of damages for a partial taking of property in a condemnation action, SCRA 1986, 13–704 (Repl.Pamp.1991) (UJI Civil 13–704), conflicts with a statute declaring when the right to compensation accrues, NMSA 1978, Section 42–2–15(A). Implicit in the Court of Appeals' certification is the further question: If such a conflict exists, how should it be resolved?

UJI Civil 13–704 provides that the damages for a partial taking are "the difference between the fair market value of the entire property immediately before the taking and the fair market value of the remaining property immediately after the taking." A 1972 decision of this Court, *State ex rel. State Highway Commission v. Hesselden Investment Co.*, 84 N.M. 424, 426, 504 P.2d 634, 636 (1972), defines the "date of taking" as the date a preliminary order of entry, in a "Special Alternative Condemnation Procedure" case like the present one, is made permanent. Section 43–2–15(A) directs that "for the purposes of assessing compensation and damages, the right thereto shall be deemed to have accrued as of the date the petition is filed, and its actual value on that date shall be the measure of compensation for all property taken...."

The question certified, then, is whether a property owner's right to compensation for

property taken in a special alternative condemnation action accrues and is to be measured by the value of the property taken on the date the condemnation petition is filed, as provided by the statute, or the date of the "taking" as contemplated by UJI Civil 13–704 and defined by *Hesselden*.

▇ We hold that under Article II, Section 20 of our Constitution, the right to compensation accrues and is measured as of the date of the taking; that UJI Civil 13–704 is a correct statement of the law in this respect; and that Section 42–2–15(A), to the extent it may be applied to provide for a different date of valuation and measurement of compensation, is unconstitutional. We further hold that *Hesselden* does not accurately describe the date of the taking, at least in a case like this, because the critical date is not the date the order authorizing entry becomes permanent, but rather is the date the order becomes effective. Because these holdings do not affect the result reached in the judgment rendered by the court below, we affirm the court's judgment.

## I.

On May 26, 1987, Dona Ana County, through its Board of County Commissioners, filed a petition in the district court to condemn property owned by William Bennett, Sr., Judith Bennett, and William Bennett, Jr., for highway improvements. The County filed its petition under the Special Alternative Condemnation Procedure established by NMSA 1978, Sections 42–2–1 to –24 (Orig.Pamp. & Cum.Supp.1993), which provides an expedited method of condemning property for public road, street, or highway purposes. *See* §§ 42–2–1 (Orig.Pamp.), 42–2–3 (Cum.Supp.1993). The parcel sought to be condemned consisted of a strip fifteen feet wide and 1980 feet long, covering an area of approximately .682 acres, and was part of a larger tract owned by the Bennetts.

On August 7, 1987, the County filed a petition for a preliminary order of entry. On the same date, the court entered such an order, allowing the County to enter the premises immediately and commence work. *See* § 42–2–6(A) (Orig.Pamp.) (preliminary order allows condemnor to immediately enter and occupy premises and to begin work). The order was to be effective when the county deposited $5,050.00, the amount offered the Bennetts in the County's condemnation petition, with the clerk of the court. *See* § 42–2–6(B) (when property is taken from private landowner, no preliminary order of entry may be granted until amount offered as just compensation is deposited with clerk of court). After depositing $5,050.00 with the clerk, the County entered the Bennetts' property in early November 1987 and began work, which included removing approximately 2800 cubic yards of soil from the property.

The Bennetts timely objected to the preliminary order of entry and requested that the proceeding be dismissed. Following oral argument at a hearing on November 19, 1987, the court announced that it was going to deny the Bennetts' objections but require the County to post a $25,000 bond. After the hearing the court did not file an order making the preliminary order permanent, and the County did not file a $25,000 bond. The court then scheduled a trial to determine the amount of compensation to be awarded to the Bennetts, as provided by Section 42–2–12 (Orig.Pamp.).

On the day of trial, October 31, 1988, the court entered an order at the County's request making the preliminary order of entry permanent, *nunc pro tunc* as of November 19, 1987. Then, at trial, the Bennetts sought just compensation for the .682–acre parcel taken and for the 2800 cubic yards of soil that the County had removed from the parcel. The trial court, however, refused to admit testimony concerning the value of, and refused the Bennetts' requested jury instruction that would have allowed the jury to award damages for, the removed soil.

After evidence had been presented, the court instructed the jury pursuant to UJI Civil 13–704 that the damages to be awarded the Bennetts for the partial taking of their property was the difference between the fair market value of their entire property immediately before the taking and the fair market value of the remaining property immediately after the taking. The court further instruct-

ed the jury that the date of the taking was November 19, 1987.

The jury returned verdicts in favor of the Bennetts, awarding $6,437.50 to William (Sr.) and Judith Bennett and $1,237.50 to William Bennett, Jr. The court entered judgment on the verdicts, including interest on each award from the date the petition had been filed, May 26, 1987.[1]

The Bennetts appealed to the Court of Appeals, arguing that they were entitled to additional compensation for the value of the removed soil and that the trial court had erred in refusing testimony on its value and their requested instruction permitting the jury to award such compensation. The Bennetts relied on *Hesselden* for the proposition that the date of taking is the date the preliminary order of entry is made permanent and argued that the date of taking was October 31, 1988. They also argued that the trial court had improperly made the preliminary order permanent *nunc pro tunc* as of November 19, 1987, and that the trial court had therefore erred in instructing the jury that the date of the taking was November 19. They further argued that because the County had removed the soil before October 31, 1988, its value was not included in the jury's award of compensation for the taking. The Bennetts sought a new trial in which they could introduce evidence regarding, and the jury would be instructed that it could award compensation for, the value of the removed soil.

The Court of Appeals certified the appeal to this Court, stating that its resolution required a determination of the proper date for valuing property taken in a condemnation proceeding. The Court of Appeals reasoned that UJI Civil 13-704 conflicts with Section 42-2-15(A) since the UJI establishes the

date of taking as the valuation date while the statute establishes the date of filing the petition for condemnation as the valuation date. Although the Court of Appeals concluded that Section 42-2-15(A) should govern the time for determining market value in a condemnation proceeding, it certified the case to this Court because it did not have authority to modify UJI Civil 13-704 to comport with the statute.

Judge Hartz specially concurred in the certification, stating that it was possible to reconcile UJI Civil 13-704 and Section 42-2-15(A) by holding that the "taking" referred to in the jury instruction is "deemed for purposes of the measurement of damages to have occurred at the time of the filing of the petition." However, he stated that this Court's opinion in *Hesselden* apparently foreclosed such an interpretation. He concluded that "[t]his case will give the supreme court the opportunity to explain, modify, or even reject *Hesselden.*"

In their supplemental brief to this Court, the Bennetts continue to argue that their property should be valued on the date it was taken as defined by *Hesselden:* the date the preliminary order of entry was made permanent—October 31, 1988 (assuming the court's *nunc pro tunc* entry was ineffective). The County argues that the correct valuation date was May 26, 1987—the date the petition for condemnation was filed. Thus, the County agrees with Judge Hartz that the date of a "taking" under UJI Civil 13-704 should be deemed for purposes of valuation to be the date the petition is filed. Accordingly, both parties now propose (the County's position having been made clear at oral argument) that we remand this case for a new trial, in which the jury will be instructed as to a revised valuation date—although the parties

---

1. Pursuant to § 42-2-15(B), the judgment included interest at the rate of six percent per annum from the date the petition was filed to the date of payment. Since we hold in this opinion that the property owner's right to compensation accrues, and is to be measured as of, the date the property is "taken," not the date the condemnation petition is filed, consistency would seem to require that interest also accrue from the date of the taking, rather than the date of filing the petition. However, the County has not objected to the provision concerning interest in the judg-

ment; the subject is not mentioned in any of the parties' briefs in either this Court or the Court of Appeals. Moreover, we base our holdings on Article II, Section 20 of our Constitution; and this constitutional provision may or may not apply to the statutory date of interest accrual in § 42-2-15(B). In any event, since the parties have not briefed or argued the question, we do not disturb the interest provision in the judgment in this case. We leave the question for a case in which it is properly presented or, possibly, for the legislature's attention.

obviously disagree over what the correct valuation date is.

We do not adopt either party's proposed valuation date. Rather, we adopt the date that the preliminary order becomes effective as the proper valuation date in a condemnation proceeding under the Special Alternative Condemnation Procedure. In reaching this conclusion, we rely on basic constitutional principles relating to takings and just compensation.

## II.

■ Both the United States Constitution and the New Mexico Constitution provide that private property shall not be taken for public use without just compensation. U.S. Const. amend. V; N.M. Const. art. II, § 20. Generally, the value of property taken by an exercise of the power of eminent domain "is determined as of the time that the owner is entitled to receive." 3 Julius L. Sackman, *Nichols' The Law of Eminent Domain* § 8.05, at 8–81 (rev. 3d ed. 1993) [hereinafter *Nichols*]. However, "there is a great diversity of opinion as to just when that point of time occurs." *Id.* at 8–82. Our legislature in Section 42–2–15(A) determined that a property owner is "entitled to receive" on the date the petition for condemnation is filed. We believe that this determination conflicts with our Constitution because use of that

date as the valuation date can deprive landowners of their constitutional right to just compensation.

■ This Court has previously held that the date of the taking is "the date on which the condemnor [becomes] vested with the legal right to possession, dominion and control over the real estate being condemned." *Hesselden*, 84 N.M. at 426, 504 P.2d at 636; *see also State ex rel. State Highway Dep't v. Yurcic*, 85 N.M. 220, 222, 511 P.2d 546, 548 (1973) (quoting *Hesselden*).[2] We do not disturb this holding now. It is on this date, conversely, that the condemnee loses control over the property and "is entitled to receive" an award of just compensation. Thus, this date is the proper date for valuing property in a condemnation proceeding.[3]

In a proceeding brought under the Special Alternative Condemnation Procedure, a preliminary order of entry "permit[s] the state or any political subdivision thereof to immediately enter and occupy the premises sought to be condemned pending the action and to do such work thereon as may be required." Section 42–2–6(A). A preliminary order of entry, therefore, effectively vests the condemnor with possession, dominion, and control over the premises. Consequently, the date the preliminary order becomes effective is the proper date to use in assessing the value of property taken under the Special

**2.** *Yurcic* reiterated *Hesselden*'s subordinate holding that the date of taking in a special alternative condemnation proceeding is the date the preliminary order of entry is made permanent. *Yurcic*, 85 N.M. at 222, 511 P.2d at 548. However, as noted below, the dispute in that case, as in *Hesselden*, was whether the taking occurred when the condemnation petition was filed or, as *Hesselden* held, when the preliminary order was made permanent. *Id.* The condemnor in *Yurcic* apparently had never physically entered the premises or disturbed the landowners' possession, so we held that, since the preliminary order was never made permanent, there had been no taking. *Id.* In the present case, there was an actual entry upon the Bennetts' land pursuant to the preliminary order, as well as physical removal of soil. *Yurcic* is therefore distinguishable on its facts; but, although its precise holding (no taking where preliminary order did not lead to physical entry and was never made permanent) is still good law, we modify its general statements in accordance with our discussion below.

**3.** Under some circumstances, a taking may occur before an order authorizing preliminary entry becomes effective—*e.g.*, when, and if, the condemnor actually enters upon the property, interferes with the owner's enjoyment, and devotes the property to public use for more than a momentary period. *See City of Albuquerque v. Chapman*, 77 N.M. 86, 89, 419 P.2d 460, 462 (1966) (stating that there is a taking in the constitutional sense "[w]hen interference with the use of property by its owner consists of actual entry upon land and its devotion to public use for more than a momentary period"). *See also id.* at 89, 419 P.2d at 462–63 ("The taking is complete 'where an entry is made upon property by the condemnor and an act committed which indicates an intent to appropriate the property.'" (quoting 2 *Nichols, supra*, § 6.01[2], at 6–18)). In this case—and, we assume, in most cases—there was no such actual entry before the court entered the preliminary order on August 7, 1987, and so the date the County became vested with the legal *right* to possession (the date the order became effective) fixed the date of the taking.

Alternative Condemnation Procedure and, therefore, in fixing the compensation to which the owner is constitutionally entitled.

In the present case, the preliminary order, by its own terms, became effective upon the County's deposit of $5,050.00 with the clerk of the court. The record shows that the County had deposited the funds with the court by August 7, 1987, the same day that the order was filed. Thus, we hold that the taking occurred on August 7 and that August 7 was the proper date to use in valuing the Bennetts' property for purposes of determining their just compensation.[4]

The legislature's selection of the date of filing of the condemnation petition as the valuation date is impermissible because, as of that date, there has been no taking (in the constitutional sense), as this Court has defined that term—*i.e.*, vesting the legal right to possession of the property in the condemnor. If the property does not change in value between the filing of the petition and the date the preliminary order becomes effective, no harm results from using the former date as the valuation date. However, if the property increases in value between the two dates, use of the former date as the valuation date deprives a landowner of some of his or her constitutional entitlement to just compensation. As the leading authority on the law of eminent domain states:

> Where the statute provides for the date of valuation at the initial step in the acquisition process, such as upon the passage of a resolution authorizing the condemnation, and then permits a protracted period of time for the prosecution of the proceeding, during which time the value of the property may rise or fall, the statute is unconstitutional as conflicting with the constitutional concept of "just compensation."

3 *Nichols, supra*, § 8.05[2], at 8–93 to –94. *See also Hesselden*, 84 N.M. at 426, 504 P.2d

at 636 ("[T]he reason that most eminent domain statutes fix the time as of which property taken or damaged is to be valued is that values of real estate are not constant and sometimes change greatly before proceedings are completed.").

### III.

Our holding today requires some clarification of this Court's earlier statements in *Hesselden* and *Yurcic* and in *State ex rel. State Highway Commission v. Burks*, 79 N.M. 373, 443 P.2d 866 (1968). In *Hesselden* and *Yurcic*, as noted above, we held that the date of the taking was the date the preliminary order of entry was made permanent. In doing so, we cited *Burks*, which stated: "The taking of the property is complete when the order of entry has been made permanent." 79 N.M. at 374, 443 P.2d at 867. This latter statement, while perhaps literally correct (focusing on the word "complete"), was dictum and was therefore not controlling authority for our holding in *Hesselden* and *Yurcic*. Moreover, in the latter cases, as previously noted, there was no issue over whether the date of the taking should be the date of entry of the preliminary order versus the date of the order making the preliminary order permanent. Rather, the parties argued that the date of the taking was either the date the petition was filed or the date the preliminary order was made permanent. As between these two dates, *Hesselden* and *Yurcic* correctly held that the latter date was (at least closer to) the date of the taking. However, to the extent *Hesselden* and *Yurcic* can be read to conflict with our holding in this case concerning the date a taking occurs under the Special Alternative Condemnation Procedure when a preliminary order of entry has been entered and acted upon, we modify those cases to conform to the principles outlined in this opinion.[5]

**4.** The County's failure to file a $25,000 bond pursuant to the court's oral instruction at the November 19, 1987, hearing is not significant. That oral ruling was not final and was subject to change prior to the court's entry of a written order. *See State v. Morris*, 69 N.M. 89, 91, 364 P.2d 348, 349 (1961) (oral ruling is not final and can be changed at any time before entry of final judgment). When the court did enter a written

order making the preliminary order permanent, it did not require posting of a $25,000 bond. The court was free to do this. Thus, the County's failure to file a bond did not violate any court order and did not impair the effectiveness of the order of August 7, 1987, authorizing preliminary entry.

**5.** Of course, an order authorizing preliminary entry under § 42–2–6 ultimately may not become

■ Our holding does not require modification of UJI Civil 13–704 in any respect. On the contrary, we preserve well-established New Mexico law, incorporated in UJI Civil 13–704, that when there is a partial taking of a larger tract of land, the landowner's damages are measured by the value of the entire tract before the taking less the value of the remaining tract after the taking. *See, e.g., Roosevelt County Elec. Co-op, Inc. v. Bowley*, 78 N.M. 9, 10–11, 427 P.2d 894, 895–96 (1967). The same measure of damages for a partial taking is codified in our Eminent Domain Code. *See* NMSA 1978, § 42A–1–26 (Repl.Pamp.1981). *Hesselden* recognizes that this measure of damages is based, or at least is consistent with, our Constitution. *See* 84 N.M. at 426, 504 P.2d at 636 (statute codifies measure of damages in cases of partial taking, "in harmony and compliance with the payment of just compensation for the taking of private property as required by Article II, Section 20"). *See also* 3 *Nichols, supra*, § 8.21, at 8–182 ("The judicial power has been held to be a constitutionally guaranteed limitation upon the power of the legislature to fix the rule of damages to the detriment of the rights of the owner to just compensation.").

Today we hold that when a taking occurs pursuant to the Special Alternative Condemnation Procedure, the date of the taking is the date the preliminary order of entry becomes effective (subject to the holding in *Yurcic* that if there is no actual entry or other disturbance of the owner's possession pursuant to the order and the order is never made permanent, there is no taking).[6] Nothing in this opinion, however, is intended to cast doubt upon any of the other provisions of the Special Alternative Condemnation Procedure; the statutory provisions for utilizing the Procedure remain intact. Our holdings relate only to the date of the taking when there has been a preliminary order of entry and to the measurement of the compensation to which the property owner is entitled when that compensation is ultimately fixed by the fact finder.

■ In the instant case, the trial court instructed the jury that the date of the taking was November 19, 1987, the date the preliminary order of entry had been made permanent (by virtue of the court's *nunc pro tunc* entry of the October 31, 1988, order). As we have indicated, the court should have instructed the jury that the date of the taking was August 7, 1987. However, we find no reversible error in the court's instruction. Reversible error would exist only if the evidence showed that using November 19 as the date of the taking caused the jury to value the property higher or lower than it would have had it been instructed that the date of the taking was August 7. For example, the jurors might have lowered the value of the property to account for the County's removal

permanent, for any of a number of reasons. In such a case, the landowner will not be deprived of ownership of the property, and the condemnor will not be liable to pay just compensation for its full value. Nevertheless, a preliminary order of entry can interfere, however temporarily, with the owner's right to use and enjoy the property and may result in the infliction of consequential damages. *See* 6 *Nichols, supra*, § 26.45, at 26–364. If such harm results from the condemnor's having gone into possession of the property, the owner will be entitled to compensation for any loss of use of the property and for any consequential damages occasioned by the taking. *See id.* at 26–375; *Howard v. Illinois Cent. R.R.*, 64 F.2d 267, 269 (7th Cir.1933); *see also Hesselden*, 84 N.M. at 427, 504 P.2d at 637 (consequential damages, such as loss of view and impaired ingress and egress, are compensable elements of damage).

6. We note that our Eminent Domain Code, found in Chapter 42A of the New Mexico Statutes An-

notated, 1978 Compilation (1981 Replacement Pamphlet), contains a provision similar to § 42–2–15(A), providing that the valuation date is the date of filing the petition for condemnation. NMSA 1978, § 42A–1–24(A) (Repl.Pamp.1981). The validity of this statute, to the extent it may be applied to limit a landowner's compensation where there has been a taking (as defined in this opinion) after a condemnation petition has been filed is questionable, for the same reasons we have outlined in connection with § 42–2–15(A). We note that § 42A–1–22(C) of the Eminent Domain Code authorizes the court to enter an order authorizing the condemnor to take immediate possession of the property if it finds that the condemnor's proposed use of the property is a public use and that immediate possession is necessary. However, our holdings today are limited to actions brought under the Special Alternative Condemnation Procedure, and we do not now express a firm opinion concerning the date of the taking or the proper valuation date in an action under the Eminent Domain Code.

of the soil, which occurred in early November, before the instructed date of the taking. If the jury did consider the removal of the soil in determining just compensation, it presumably would have awarded the Bennetts greater compensation had it been instructed that the date of the taking was August 7, because at that time the County had not removed the soil and the value of the property was presumably higher.

However, the record gives no indication that the jury in determining just compensation considered in any way the fact that the County had removed soil from the Bennetts' land. At trial, an appraiser for the County and an appraiser for the landowners testified to the value of the parcel that was taken. Both appraisers calculated the value of the parcel by using the "before and after" method described above. They based both the "before" and the "after" values on their estimates of the per-square-foot value of the land. It appears that neither appraiser valuing the Bennetts' property gave any consideration to the County's removal of 2800 cubic yards of soil from that property before November 19. In other words, neither appraiser lowered the value of the land to account for removal of the soil. Consequently, from all that appears in the record—and neither party suggests anything to the contrary—the value of the property taken was the same on August 7, 1987, as it was approximately two and one-half months later on November 19.

Accordingly, we conclude that the amount of just compensation determined by the jury included the value of the soil removed by the County after August 7 and before November 19, 1987, so that, had the jury been properly instructed that the date of the taking was August 7, there would have been no difference in the amount of compensation the jury awarded to the Bennetts. We therefore affirm the judgment of the district court.

IT IS SO ORDERED.

BACA and FROST, JJ., concur.