# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2024-NMCA-029**

**Filing Date: December 28, 2023**

**No. A-1-CA-39674**

**CITY OF ALBUQUERQUE, a New Mexico
municipal corporation,**

      Plaintiff-Appellant,

v.

**TECOLOTE RESOURCES, INC.; KELLY'S
LEGACY, LLC; SHERI I. BOVINO, Trustee
of THE BURDEN CHILDREN'S TRUST
DATED DECEMBER 17, 1986; TECOLOTE
X-KMARTII, LLC; BOKF, NA d/b/a
BANK OF ALBUQUERQUE; COUNTY OF
BERNALILLO; NEW MEXICO TAXATION
& REVENUE DEPARTMENT; and
UNKNOWN OWNERS OR CLAIMANTS OF
THE PROPERTY INVOLVED,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Erin B. O'Connell, District Court Judge**

Stiff, Garcia & Associates, LLC
John S. Stiff
Edward F. Snow
Albuquerque, NM

Esteban A. Aguilar Jr., City Attorney
John DuBois, Assistant City Attorney
Adam P. Leuschel, Assistant City Attorney
Albuquerque, NM

for Appellant

Stelzner, Winter, Warburton, Flores & Dawes, P.A.
Dan Gershon
Albuquerque, NM

for Appellees

**OPINION**

**IVES, Judge.**

**{1}** In this partial takings case, the City of Albuquerque appeals from a judgment entered by the district court based on a jury verdict of $712,000 as just compensation for the City's taking of part of a lot owned by Tecolote Resources, Incorporated. *See* N.M. Const. art. II, § 20 ("Private property shall not be taken or damaged for public use without just compensation."). The verdict included a stipulated amount of $69,350 to compensate Tecolote for the value of the land taken, plus an additional amount to compensate Tecolote for impairment of its access to the part of the lot that remained Tecolote's after the taking. Whether Tecolote should be compensated for impaired access has been the key issue throughout this litigation, and on appeal the City raises three claims of instructional error related to that issue. Specifically, the City contends that (1) the jury was not properly instructed regarding the causal connection between the taking and the claimed damages; (2) the jury should have received an instruction based on UJI 13-719 NMRA because New Mexico law only allows damages for impaired access caused by a partial taking if the impairment is unreasonable; and (3) the jury should have been instructed on Tecolote's duty to mitigate its damages to its right of access. As to the first claim of error, we conclude that the City has failed to demonstrate that the given instructions did not adequately convey the law regarding causation. As to the second claim of error, we conclude that the City was not entitled to an instruction based on UJI 13-719 because, in partial takings cases, neither NMSA 1978, Section 42A-1-26 (1981) nor New Mexico precedent require the owner to prove that the resulting access to their remaining property is unreasonable. Finally, as to the third claim of error, we conclude that the pretrial order—which did not include the City's mitigation of damages defense—controlled the scope of the trial, and that the City did not preserve its argument that the district court should have amended the pleadings pursuant to Rule 1-015(B) NMRA. We therefore affirm.

**BACKGROUND**

**{2}** Tecolote owns property, West Central Plaza, located on the southwest corner of Central Avenue and Atrisco Drive in Albuquerque, New Mexico. Exercising the power of eminent domain, the City initiated a condemnation proceeding to aid in its construction of the Albuquerque Rapid Transit system (ART) and eventually took a 5,279 square-foot strip of Tecolote's property along Central Avenue. The parties agreed that the fair market value of the taken land was $69,350. Tecolote sought an additional $2,931,454 to compensate Tecolote for impairment of access to its remaining property.

**{3}** At trial, Tecolote presented evidence that before the taking, Tecolote's property had several access points through which people who were traveling both east and west on Central Avenue could enter and exit. After the taking and in constructing ART, the City built a median on Central Avenue that prevented left turns into and out of the

property, as well as a new signalized intersection with a left turn into a Long John Silver's that borders Tecolote's property. However, it was undisputed that access from Tecolote's property to and from the light was not possible because Tecolote developed a new drainage system for its parking lot, which it placed between the two properties and landscaped over.

**{4}** Each party's appraiser testified that they considered the changes in access when calculating the difference between the fair market value of the entire property before the taking and the fair market value of the remaining property after the taking. The appraisers disagreed about whether the changed access affected the value; the City's appraiser testified that it did not, while Tecolote's appraiser testified that it did.

**{5}** With respect to the measure of damages, including any damages based on changed access, the district court gave the jury instructions based on several uniform instructions adopted by our Supreme Court: UJIs 13-704, 13-705, and 13-722 NMRA. The City requested—and the district court refused—three additional jury instructions at issue in this appeal.

**{6}** The jury awarded Tecolote a total of $712,000 to compensate it for the agreed upon value of the taken land and for impairment of access to its remaining land. The district court denied the City's motion for a new trial, which was based on its theory that UJI 13-719 should have been given. The City appeals.

## DISCUSSION

**I.     The City Has Not Demonstrated That the District Court Erred by Refusing the City's Requested Instruction Regarding Causation or That Any Such Error Was Prejudicial**

**{7}** The City argues that the district court erred by refusing to give the following causation instruction, based on *City of Albuquerque v. Westland Development Co.*, 1995-NMCA-136, 121 N.M. 144, 909 P.2d 25:

> An owner is entitled to compensation to for [sic] the loss in value of its remaining land *caused by the taking* of the condemned property and the use of the taken portion. An owner is not entitled to compensation for any reduction in the value of the uncondemned portion of its parcel *resulting from* the use of the land not acquired from the owner by condemnation.

(Emphases added.) We are not persuaded. For the following reasons, we hold that the jury instructions given by the district court, which were based on uniform instructions adopted by our Supreme Court, sufficed to adequately convey New Mexico law regarding causation in partial takings cases, and that the City has failed to establish that the district court's refusal of the City's requested instruction warrants reversal.

**{8}** We review the district court's refusal to give a proffered jury instruction de novo. *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853. This de novo standard of review includes two fundamental concepts that drive our analysis here. First, if the given instructions "considered as a whole, fairly present the issues and the law applicable thereto, they are sufficient," and "[d]enial of a requested instruction is not error." *Sandoval v. Gurley Properties Ltd.*, 2022-NMCA-004, ¶ 11, 503 P.3d 410 (internal quotation marks and citation omitted). Second, not every instructional error warrants reversal; only prejudicial errors do. *See Benavidez*, 2007-NMSC-026, ¶ 19. Because the burden is on the City, as the appellant, to "clearly demonstrate that the district court erred," *Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701, the City must show that (1) the given instructions did not fairly present the issues and applicable law and that it was therefore error for the district court to refuse to give the instruction requested by the City, and (2) the refusal of the requested instruction was prejudicial.

**{9}** We conclude that the City has not carried its burden to demonstrate error or prejudice. In sum, as to error, we believe that the given jury instructions required Tecolote to prove that its damages were caused by the partial taking, and the City has not explained why the given instructions failed to adequately convey the causation requirement to the jury such that it was necessary to also give the supplemental causation instruction requested by the City. As to prejudice, even if we were to assume that the district court erred by refusing to give the requested instruction, we do not believe that the City has demonstrated that the absence of the instruction had any impact on the City's ability to present its case to the jury. We discuss error and prejudice in turn.

**A.    The District Court Gave Uniform Jury Instructions That Conveyed the Causation Requirement, and the City Has Failed to Establish That the Refusal of Its Supplemental Causation Instruction Was Error**

**{10}** The City is correct that, under New Mexico law, "just compensation," N.M. Const. art. II, § 20, is limited to damages caused by the taking. Our Supreme Court has defined "just compensation" generally as "an amount sufficient to cover [the owner's] loss—that is, to make [them] whole and fully indemnify [them]." *Primetime Hosp., Inc. v. City of Albuquerque*, 2009-NMSC-011, ¶ 15, 146 N.M. 1, 206 P.3d 112 (internal quotation marks and citation omitted)*.* How to measure the owner's loss depends on the nature of the taking. *See id.* When, as in this case, the taking is partial—i.e., when the government only takes part of the owner's parcel—damages are measured using the "before and after rule," *Westland*, 1995-NMCA-136, ¶ 4, which is codified in Section 42A-1-26.[1] *See State ex rel. State Highway Comm'n v. Hesselden Inv. Co.*, 1972-

---

[1]The statute was originally enacted in 1968 and codified as NMSA 1953, § 22-9-9.1 (1968), which was identical to the current version of the statute except that the introductory clause in the original indicated that the statute applied "[n]otwithstanding provisions of the Relocation Assistance Act." As part of a recompilation in 1981, the statute was moved to its current place, and the clause pertaining to the Relocation Assistance Act was removed. *See* 1981 N.M. Laws, ch. 125, § 1 (stating the chapter was recompiling the Eminent Domain Code), § 22 (enacting Section 42A-1-26 with the same language as Section 22-9-9.1 absent the introductory clause subjecting the statute to the Relocation Assistance Act).

NMSC-071, ¶ 4, 84 N.M. 424, 504 P.2d 634, *overruled on other grounds by Cnty. of Doña Ana ex rel. Bd. of Cnty. Comm'rs v. Bennett*, 1994-NMSC-005, ¶ 4, 116 N.M. 778, 867 P.2d 1160. The statute explicitly requires a causal connection between the taking and the damages: "[T]he measure of compensation and damages *resulting from the taking* shall be the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property remaining immediately after the taking." Section 42A-1-26 (emphasis added). The statute's causation requirement has been discussed by our Supreme Court, which explained that a landowner is entitled to "compensation for property actually taken" plus "any loss of value suffered by the remaining property *because of the condemnation* of a particular portion." *Yates Petroleum Corp. v. Kennedy*, 1989-NMSC-039, ¶ 11, 108 N.M. 564, 775 P.2d 1281 (emphasis added).

**{11}** Here, the district court gave the jury an instruction based on UJI 13-722 that addressed causation:

> The owner of property is usually reluctant to have its property taken. Thus Defendants are not a willing seller. *Nevertheless, Defendants are entitled to recover for damage to the property caused by the taking.* You should exercise care and good judgment in determining damages so that both the Defendants and the Plaintiff are treated fairly. Defendants should receive and the Plaintiff should pay just compensation, as required by law.

(Emphasis added.) Because the given instruction is based on a uniform jury instruction adopted by our Supreme Court, the given instruction is a presumptively correct statement of the law. *See State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175. Further, as required by the statute, the given instruction did not allow the jury to award damages caused by anything other than the taking itself. We therefore conclude that the instruction correctly conveys the causation requirement set forth in Section 42A-1-26.

**{12}** On appeal, the City does not acknowledge that the given instruction requires causation, much less explain why the given instruction fails to adequately convey the law on the issue. Because the given instruction states the causation requirement and the City provides no argument as to the inadequacy of the given instruction, the City has not demonstrated that the district court erred by refusing the requested supplemental instruction on causation. *See Corona*, 2014-NMCA-071, ¶ 26 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred."). Based on the arguments presented, we hold that the given instruction sufficed, and that the district court did not err in denying the proposed instruction. *See Sandoval*, 2022-NMCA-004, ¶ 11.

## B.    The City Has Not Demonstrated Prejudice

---

Throughout this opinion we refer to the statute as Section 42A-1-26, even when we discuss cases that analyzed or applied the original version.

**{13}** Even if we were to agree with the City that the district court erred by denying the supplemental causation instruction requested by the City, we would affirm because the City has not demonstrated that the absence of its requested instruction was prejudicial. *See Benavidez*, 2007-NMSC-026, ¶ 19 (requiring the complaining party to show prejudice). The City's briefs do not address prejudice by, for example, explaining why it believes the jury would have been confused or misled without the requested instruction or why the absence of the requested instruction prevented the City from presenting its causation theory to the jury. And it is not our place to imagine and then craft a prejudice argument for the City, *see Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53, or to wander through the record hunting for signs of prejudice, *see Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Importantly, the City does not contend on appeal that the evidence of causation does not suffice to support the verdict.

**{14}** Because the City has not demonstrated error or prejudice, we affirm the district court's decision to deny the requested instruction.

## II. The District Court Did Not Err by Refusing to Give UJI 13-719 Because It Should Not Be Used in Partial Takings Cases

**{15}** The City argues that the district court erred by refusing the City's proposed instruction based on UJI 13-719, which stated that the City "may control, regulate and designate *reasonable* access to and from [Tecolote's] property, but, if such control, regulation or designation is *unreasonable*, the owner is entitled to compensation for such limitation of this access." (Emphases added.) The City contends that the refusal to give this instruction was prejudicial because the jury was allowed to award damages "without first determining the question of reasonableness."

**{16}** Reviewing this legal issue de novo, *see Benavidez*, 2007-NMSC-026, ¶ 19, we conclude that the district court did not err. In sum, the unreasonableness requirement in UJI 13-719 applies only when no land is taken but the landowner nevertheless seeks damages for lost or impaired access; when, as in this case, a partial taking has occurred, UJI 13-719 does not apply. As we have explained, in partial takings cases, damages are measured using the before-and-after rule set forth in Section 42A-1-26. And as we will explain, Section 42A-1-26 does not impose an unreasonableness requirement. The statute provides for recovery of all elements of damages caused by the taking, including lost or impaired access, if those elements reduced the fair market value of the remaining property. This measure of damages was properly conveyed by instructions that the district court gave based on UJIs 13-704 and -705.

**{17}** To resolve the City's claim of error, we must examine the relationship between Section 42A-1-26, our Supreme Court's precedents regarding damages for impaired access, and UJIs 13-704, -705, and -719. Because Section 42A-1-26 was enacted after our Supreme Court issued several precedential opinions on the subject of damages for impaired access, we believe that the plain language of Section 42A-1-26, which is "the primary indicator of legislative intent," *Elite Well Serv., LLC v. N.M. Tax'n & Revenue*

*Dep't*, 2023-NMCA-041, ¶ 7, 531 P.3d 635 (internal quotation marks and citation omitted), is best understood in the context of the pre-statute opinions. *See State v. Thompson*, 2022-NMSC-023, ¶ 18, 521 P.3d 64 (interpreting statute based in part on context in which it was adopted). We therefore begin our analysis by describing the pre-statute opinions, then turn to the plain language of the statute and the post-statute opinions. Finally, we explain why we believe that current New Mexico law regarding damages in partial takings cases was accurately conveyed by the given instructions, which were based on UJIs 13-704 and -705, and why we believe it was not error to refuse to give an instruction based on UJI 13-719.

**{18}** Before the partial takings statute took effect in 1968, our Supreme Court decided a number of cases involving takings related to the construction of highways, and in those cases, it recognized that property owners have a right of access to their property. The Court defined the right "as a right of ingress to and egress from land on an abutting street or highway and therefrom on the system of public roads, subject to *reasonable* traffic regulations and not affected by diversion of traffic or *reasonable* circuity of travel." *State ex rel. State Highway Comm'n v. Danfelser*, 1963-NMSC-138, ¶ 23, 72 N.M. 361, 384 P.2d 241 (emphases added). In one partial takings case, the Court emphasized the "hopeless conflict" that existed in cases outside of New Mexico on how to determine whether damage due to loss of access was or was not compensable. *Id.* ¶¶ 9-10. The Court observed that "[t]here seems to be a radical difference in viewpoint among justices who have been required to rule upon the point. This conflict is so pronounced that most of the cases contain lengthy dissertations expounding the views of the author of the opinion or the dissent." *Id.* ¶ 10. The conflict made its way to our Supreme Court, frequently dividing the justices. *See State ex rel. State Highway Comm'n v. Brock*, 1968-NMSC-165, ¶¶ 16-35, 80 N.M. 80, 451 P.2d 984 (3-2 decision) (Moise, J. and Oman, J., dissenting); *State ex rel. State Highway Comm'n v. Chavez*, 1966-NMSC-222, ¶¶ 12-23, 77 N.M. 104, 419 P.2d 759 (4-1 decision) (Noble, J., dissenting); *State ex rel. State Highway Comm'n v. Lavasek*, 1963-NMSC-020, ¶¶ 18-27, 73 N.M. 33, 385 P.2d 361 (3-1 decision) (Moise, J., dissenting); *Danfelser*, 1963-NMSC-138, ¶¶ 28-54 (4-1 decision) (Moise, J., dissenting); *State ex rel. State Highway Comm'n v Silva*, 1962-NMSC-172, ¶¶ 22-41, 71 N.M. 350, 378 P.2d 595 (4-1 decision) (Moise, J., dissenting). These right of access cases involved various types of takings claims: partial takings, *see Brock*, 1968-NMSC-165, ¶¶ 2-3; *Lavasek*, 1963-NMSC-020, ¶ 1; *Danfelser*, 1963-NMSC-138, ¶ 4; a complete taking where the right was infringed before the taking took place, *see Chavez*, 1966-NMSC-222, ¶¶ 1-2; and others in which none of the property owner's land was taken but the owner nevertheless sought damages for changed access, *see Silva*, 1962-NMSC-172, ¶¶ 1-2; *Bd. of Cnty. Comm'rs of Lincoln Cnty. v. Harris*, 1961-NMSC-165, ¶¶ 1-2, 69 N.M. 315, 366 P.2d 710.

**{19}** Importantly, the pivotal issue in these pre-statute precedents was whether harm resulting from lost or impaired access was determined to be a *compensable* element of damages. *See, e.g., Silva*, 1962-NMSC-172, ¶ 9 (stating that "only one whose damage [of their right of access] . . . is special and direct as distinguished from remote and consequential, and which differs in kind from that of the general public, suffers a compensable injury"); *Harris*, 1961-NMSC-165, ¶ 10 ("[I]njury [to the right of access]

which is the result of the proper imposition of regulations under the police power is not compensable."). In several cases, the Court concluded that the losses of business or traffic related to diminished access were not "compensable." *See Brock*, 1968-NMSC-165, ¶ 5; *Lavasek*, 1963-NMSC-020, ¶ 8; *Danfelser*, 1963-NMSC-138, ¶ 22. And the Court consistently applied a rule that a loss related to diminished access is only compensable if the post-taking access is unreasonable, even in cases in which part of the owner's property was taken. *See Brock*, 1968-NMSC-165, ¶¶ 2, 5-6, 13 (applying the rule that "reasonable access . . . is noncompensable" to a partial taking); *Danfelser*, 1963-NMSC-138, ¶¶ 4-5, 22 (same); *Lavasek*, 1963-NMSC-020, ¶¶ 3, 10 (same); *Bd. of Comm'rs of Santa Fe Cnty. v. Slaughter*, 1945-NMSC-019, ¶¶ 4-5, 26-27, 49 N.M. 141, 158 P.2d 859 (same); *Silva*, 1962-NMSC-172, ¶¶ 3, 14, 17 (applying the reasonable access rule for damages related to a diversion of traffic where no land was taken).

**{20}**    In 1968 the Legislature stepped in, enacting Section 42A-1-26 to resolve the conflict and clarify the law regarding which elements of damages may be recovered in partial takings cases. As discussed, the first sentence of the statute sets forth the before-and-after rule. *Hesselden*, 1972-NMSC-071, ¶ 4. The second sentence makes clear that no element of damages should be excluded, and that precedent regarding whether an element was compensable no longer applies in partial takings cases. Specifically, the Legislature provided that "*all* elements which would enhance or diminish the fair market value before and after the taking shall be considered *even though some of the damages sustained by the remaining property, in themselves, might otherwise be deemed noncompensable*." Section 42A-1-26 (emphases added). Importantly, the Legislature used broad language—"all elements"—and did not chisel out an exception pertaining to damages for lost or impaired access. If the Legislature had intended for damages related to access to be allowed only if the taking unreasonably impaired access, the Legislature would have said so. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (text only) (citation omitted)). But the words reasonable and unreasonable do not appear anywhere in Section 42A-1-26, and "[w]e will not read into a statute language which is not there." *Elite Well Serv., LLC*, 2023-NMCA-041, ¶ 7 (internal quotation marks and citation omitted). Focusing on the language that is there, our Legislature clarified that, in partial takings cases, courts should not use the judicially-crafted compensability tests that predated the statute. *See Thompson*, 2022-NMSC-023, ¶ 18 (recognizing that in identifying legislative intent, courts should "presume that the Legislature is well informed and aware of existing statutory and common law"). As we have explained, our Supreme Court had commonly formulated the rule to make the compensability of access damages hinge on whether post-taking access was reasonable. *See, e.g.*, *Danfelser*, 1963-NMSC-138, ¶ 22; *Brock*, 1968-NMSC-165, ¶ 5. By clarifying that precedents on compensability do not apply in partial takings cases, the Legislature dispensed with the reasonableness test in those cases.

**{21}**    Viewing the plain language of Section 42A-1-26 through the lens of history, we believe that the Legislature's intent was to ensure that, in partial takings cases, just compensation includes all elements of damages, including lost or impaired access, so

long as those damages are caused by the taking and reduce the fair market value of the remaining property, even if those elements would not have been considered compensable under precedent decided before the statute took effect. In the context of the pre-statute precedents, the plain language of the statute means that if part of an owner's land is taken, and if the owner proves that the taking caused lost or impaired access that diminished the fair market value of the remaining property, the owner is entitled to damages as just compensation for the lost or impaired access, regardless of whether the government's regulation of traffic is reasonable or unreasonable and regardless of whether the owner's post-taking access is reasonable or unreasonable.

{22}    Our understanding of the Legislature's intent is buttressed by two opinions issued by our Supreme Court after Section 42A-1-26 took effect. In *Hesselden*, the Court stated that Section 42A-1-26 "codifies the correct and existing rule or measure of damages in cases of a partial taking," and that "[t]o the extent that any prior decisions may have excluded properly compensable elements of damage and thereby resulted in a lesser amount of compensation, they did not follow the correct and existing rule . . . and are hereby specifically reversed." 1972-NMSC-071, ¶ 4. Applying the correct rule, as set forth in the statute, the Court affirmed the giving of an instruction that allowed damages for, as relevant here, "impaired ingress and egress and circuitous indirect access," and the Court affirmed the refusal of requested jury instructions that would have "den[ied] just compensation" for those elements of damages. *Id.* ¶ 13. As we read *Hesselden*, our Supreme Court recognized that Section 42A-1-26 clarified the law with respect to damages in partial takings cases, doing away with the compensability tests—including the reasonableness test—that had at times been applied before the statute took effect.

{23}    However, the reasonableness test continues to apply to cases in which no land is taken, as our Supreme Court recognized in another opinion issued after Section 42A-1-26 took effect. In *Hill v. State Highway Commission*, the government took no land from the owner, but the owner sought damages for impaired access. 1973-NMSC-114, ¶¶ 1-2, 85 N.M. 689, 516 P.2d 199. The owner's theory was that a detour that existed during the construction of Interstate 40 interfered with the flow of traffic and potential customers to the owner's "curio shop, service station, snake house, cafe, garage and two residential buildings," which previously "had unlimited access to U.S. Highway 66." *Id.* The district court determined that the impairment of access was unreasonable and awarded damages to compensate the landowners for the loss of market value to their property. *Id.* ¶ 2. Unsurprisingly, on appeal, our Supreme Court did not rely on Section 42A-1-26. Instead, the Court relied on its pre-statute precedents, under which the right of access was "'subject to *reasonable* traffic regulations and not affected by diversion of traffic or *reasonable* circuity of travel.'" *Hill*, 1973-NMSC-114, ¶ 5 (quoting *Danfelser*, 1963-NMSC-138, ¶ 23) (emphases added). We understand *Hill* to mean that in cases in which no land was taken from the landowner, but the landowner seeks compensation for interference with their right of access, damages may only be awarded if the interference is unreasonable. *See id.* ¶¶ 3, 5, 7.

**{24}** Reading *Hesselden*, *Hill*, and Section 42A-1-26 together, we hold that, in partial takings cases, just compensation includes all elements of damages, including lost or impaired access, that result from the taking and reduce the fair market value of the owner's remaining property, regardless of whether those elements would have been considered compensable under precedent decided before the statute took effect. We therefore also hold that if an owner in a partial takings case proves that the taking caused access to their remaining property to be lost or impaired such that the fair market value of their remaining property diminished, the owner is entitled to damages as just compensation for the lost or impaired access, and that the owner need not prove that the government's regulation of traffic is unreasonable or that the adverse impact of that regulation on the owner's access is unreasonable.

**{25}** Our holdings lead us to conclude that the damages instructions given by the district court, which were based on UJIs 13-704 and -705, set forth the law applicable to damages in partial takings cases and that the district court did not err by refusing to give the instruction requested by the City based on UJI 13-719. By essentially tracking the first sentence of Section 42A-1-26, the given instruction, which was based on UJI 13-704, describes the before-and-after rule used to measure damages in partial takings cases: "The money damages to be paid the owner for the property actually taken is the difference between the fair market value of the entire property immediately before the taking and the fair market value of the remaining property immediately after the taking." And, consistent with our understanding of the law in partial takings cases, the given instruction based on UJI 13-705 informed the jury that the total amount of damages could include special damages for "[i]mpaired ingress, egress and circuitous indirect access" to the remaining property. Because neither Section 42A-1-26 nor precedent imposes an unreasonableness requirement for access damages in partial takings cases, it would have been error to give the City's proposed instruction based on UJI 13-719. We believe that such an instruction would have improperly imposed an additional requirement on Tecolote—a requirement that does not apply when an owner seeks damages for lost or impaired access caused by a partial taking. We therefore affirm both the district court's refusal to give the City's requested instruction and the district court's denial of the City's motion for a new trial.

**{26}** To provide greater clarity on this point, we suggest that the UJI Civil Committee consider adding a use note for UJI 13-719. We also suggest that the Committee consider referring to Section 42A-1-26, where applicable, in the commentaries to the uniform instructions.

### III. The District Court Did Not Err by Denying the City's Requested Instruction on Mitigation of Damages

**{27}** The City's final claim of error pertains to the instruction that it requested based on UJI 13-1811 NMRA, which would have stated that Tecolote had a duty to mitigate its damages. The district court refused the instruction because the City did not raise the

issue in its pleadings or in the pretrial order.2 On appeal, the City argues that the court should have amended the pretrial order under Rule 1-015(B) to allow the City to present its mitigation of damages theory to the jury because the issue was fully litigated. We disagree because we conclude that the pretrial order was controlling, and that the City failed to preserve the argument it makes on appeal.

**{28}** A pretrial order controls the applicable legal theories and the subsequent course of the case, once "made and entered without objection," so long as there are no motions to modify the order. *Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, ¶ 24, 122 N.M. 543, 928 P.2d 269. Here, the district court entered a pretrial order. The City concedes that the mitigation theory was "absen[t] in the pretrial order" and does not argue that it objected to the order. Instead, the City contends that the district court abused its discretion by not granting a Rule 1-015(B) amendment to conform to the pleadings since the parties fully litigated the issue. The City did not preserve this claim of error. The City points to no place in the record, nor did we find any, where it requested a Rule 1-015(B) amendment. Because the City did not preserve the issue and has not asked us to apply any of the exceptions to the preservation rule, *see* Rule 12-321(B) NMRA, we decline to reach the merits of the issue. We therefore affirm the district court's decision to deny the City's requested instruction based on UJI 13-1811.

**CONCLUSION**

**{29}** We affirm.

**{30} IT IS SO ORDERED.**

**ZACHARY A. IVES. Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**KRISTINA BOGARDUS, Judge**

---

2The district court also denied the instruction because it was unpersuaded that the duty exists in the context of partial takings. We need not decide that issue because we reject the City's claim of error procedural grounds.